Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
**HARTMAN & HARTMAN**
510 W. Plumb Lane, Suite B
Reno, NV 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com

Michael S. Budwick, Esq. #938777 – Admitted *Pro Hac Vice*
Solomon B. Genet, Esq. #617911 – Admitted *Pro Hac Vice*
Gil Ben-Ezra, Esq. #118089 – Admitted *Pro Hac Vice*
Kevin Paule, Esq. #125276 – Admitted *Pro Hac Vice*
**MELAND BUDWICK, P.A.**
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
T: (305) 358-6363
F: (305) 358-1221
mbudwick@melandbudwick.com
sgenet@melandbudwick.com
gbenezra@melandbudwick.com
kpaule@melandbudwick.com

Attorneys for Christina W. Lovato, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>DOUBLE JUMP, INC.<br><br>Debtor. | Lead Case No.: BK-19-50102-gs<br>(Chapter 7)<br><br>Substantially Consolidated with: |

| 19-50130-gs | DC Solar Solutions, Inc. |
|---|---|
| 19-50131-gs | DC Solar Distribution, Inc. |
| 19-50135-gs | DC Solar Freedom, Inc. |

| | |
|---|---|
| Affects:<br>☒ DC Solar Solutions, Inc.<br>☒ DC Solar Distribution, Inc.<br>☒ DC Solar Freedom, Inc.<br>☒ Double Jump, Inc. | |
| CHRISTINA W. LOVATO,<br><br>　　　　Plaintiff,<br><br>v.<br><br>KING SOLARMAN, INC., CHIANG LIAN CUNG a/k/a MICHAEL CUNG, KING SOLARMAN (INDION) FUND I, LLC, and KING SOLARMAN (INDION) FUND II, LLC,<br><br>　　　　Defendants. | Adversary No.: 21-05028-gs<br><br>**TRUSTEE'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS ADVERSARY COMPLAINT [ECF No. 7] FILED BY KING SOLARMAN, INC., KING SOLARMAN (INDION) FUND I, LLC AND KING SOLARMAN (INDION) FUND II, LLC**<br><br>**Hearing Date:** April 29, 2021<br>**Hearing Time:** 9:30 a.m. |

Christina W. Lovato, as the chapter 7 trustee ("***Trustee***" or "***Plaintiff***") for the bankruptcy

estates of DC Solar Solutions, Inc. ("***DCSS***"), DC Solar Distribution, Inc. ("***DCSD***"), DC Solar

Freedom, Inc. ("**DCSF**", and with DCSD and DCSS, "**DC Solar**") and Double Jump, Inc. ("**DJ**," and with DC Solar, the "**Debtors**"), responds in opposition to the Motion to Dismiss Adversary Complaint ("**MTD**") filed by Defendants King Solarman, Inc. ("**King Solarman**"), King Solarman (Indion) Fund I, LLC ("**Solarman Fund I**"), and King Solarman (Indion) Fund II, LLC ("**Solarman Fund II**") (collectively, the "**Moving Defendants**") [ECF 7] and states as follows.

## PRELIMINARY STATEMENT

The Trustee is an after-the-fact fiduciary appointed by the Office of the United States Trustee. In her Complaint [ECF No. 1], the Trustee sets forth facts explaining the Ponzi scheme perpetrated by Jeff Carpoff and Paulette Carpoff ("**Carpoffs**") through DC Solar and other entities ("**Carpoff Ponzi Scheme**"). The Trustee explains the timeline, the purpose, and the roles of certain players connected to the Carpoff Ponzi Scheme. The Trustee explains that a purpose of the Carpoff Ponzi Scheme was for the Carpoffs to loot the Debtors for their personal benefit. The Trustee alleges that the specific transfers to the Moving Defendants were in furtherance of and related to this purpose and the Carpoff Ponzi Scheme. And the Trustee identifies: (1) the date of the transfers; (2) the amount of the transfers; (3) the specific debtor-transferor; and (4) the transferee (the Moving Defendants). The Trustee has satisfied her burden under Fed.R.Civ.P. 8 and 9 (as applicable) for each count of the Complaint.

The Moving Defendants' characterization of the Complaint is inaccurate. The Trustee has set forth a "short and plan statement of the claim" showing she is entitled to relief, more than sufficiently complying with the pleading requirements. This is not the "rare case" that warrants dismissal under Fed.R.Civ.P. 12(b)(6), and the Moving Defendants' MTD should be denied.

## STATEMENT OF FACTS

1.      The Complaint sets forth the nature of DC Solar's purported business and describes the Ponzi scheme perpetrated by certain of DC Solar's former insiders.[1]

2.      DC Solar was engaged in a business related to manufacturing, marketing, selling, and leasing mobile solar generators ("**MSGs**").[2]

---

[1] Compl. at ¶¶ 8-21.
[2] Compl. at ¶ 10.

2

3.      Generally, Debtor-DCSS would manufacture and sell MSGs for $150,000 each.[3] The buyers were typically tax equity funds owned by a financial investor seeking investment federal tax credits.[4] The buyers would provide DCSS with a down payment and execute a promissory note for the remaining balance of the MSGs.[5] Then, the buyers would lease the MSGs to DCSS's affiliate, DCSD, which in turn purported to sub-lease the MSG to a third-party end-user/sub-lessee.[6] The end-user's/sub-lessee's lease payments were intended (purportedly) to cover the interest payments on the promissory note.[7]

4.      Over the years, DCSS closed over two dozen transactions, purportedly selling over 15,000 MSGs and generating hundreds of millions of dollars of revenue.[8]

5.      However, certain of DC Solar's former insiders, including the Carpoffs, were also perpetrating a Ponzi scheme through DC Solar and other entities.[9]  As alleged in the Complaint:

> The Carpoffs caused DC Solar to transfer monies obtained from new buyers of MSGs to cover obligations owed to earlier buyers. This was contrary to the Carpoffs' representations to the financial investors that sub-lessee revenue would pay those obligations.  Moreover, the Carpoffs misrepresented to the financial investors the number of MSGs that DC Solar manufactured, ultimately claiming in 2018 that the figure exceeded 15,000 when it was actually far less. Moreover, although the Carpoffs represented to the financial investors that DC Solar had a series of sub-lessees willing to pay to utilize the MSGs, some sub-leases were real but others were not.

> Further, the Carpoffs looted DC Solar to, among other things, fund their own lavish lifestyle, including through casino gambling, buying a semi-pro baseball team, the use of private jets and the purchase of real and personal property (such as automobiles).  And the Carpoffs looted DC Solar to, among other things, pay-off co-conspirators and make payments such as marketing payments (legitimate or illegitimate) to third-parties. This all was intended, in material part, to further the Carpoff Ponzi Scheme and create the perception that DC Solar was profitable.[10]

---

[3] Compl. at ¶ 11.
[4] Compl. at ¶ 11.
[5] Compl. at ¶ 11.
[6] Compl. at ¶ 11.
[7] Compl. at ¶ 11.
[8] Compl. at ¶ 15.
[9] Compl. at ¶ 16.
[10] Compl. at ¶¶ 17-18.

6.      King Solarman was a DC Solar vendor.[11]

7.      Defendant Chiang Lian Cung a/k/a Michael Cung ("***Cung***") is the sole shareholder and CEO of King Solarman.[12] Cung is also the controlling person of King Solarman Management, LLC, which is the managing member of Solarman Fund I and Solarman Fund II.[13]

8.      Cung had a close relationship with Jeff Carpoff.[14]

9.      Beginning no later than December 2011, Jeff Carpoff caused DCSS to begin making transfers to King Solarman.[15]

10.     Within four years of the Petition Date, DCSS made transfers to King Solarman as reflected in Exhibit 1 to the Complaint ("***King Solarman Transfers***").[16] For each of the King Solarman Transfers, the Trustee identifies the date, transferor, transferee, and amount.[17]

11.     From no later than January 2014, King Solarman transferred, directly and indirectly, large sums of monies to Jeff Carpoff-affiliated non-debtor entities.[18] For example, on January 2, 2014, King Solarman sent $600,000 to a non-debtor entity affiliated with Jeff Carpoff.[19]

12.     Similarly, King Solarman used intermediaries to send payments to non-debtor entities affiliated with Jeff Carpoff, including through an entity named "YT International, Inc.," which shares the same address as King Solarman.[20]

13.     King Solarman also made payments to third-parties on behalf of Jeff Carpoff, looting the Debtors. For example, on or about September 10, 2015, King Solarman wired $80,000 to the Mandalay Bay Casino "to further benefit Jeff Carpoff."[21]

---

[11] Compl. at ¶ 25.
[12] Compl. at ¶ 26.
[13] Compl. at ¶ 3.
[14] Compl. at ¶ 26.
[15] Compl. at ¶ 27.
[16] Compl. at ¶ 28.
[17] Compl. Ex. 1.
[18] Compl. at ¶ 29.
[19] Compl. at ¶ 29
[20] Compl. at ¶ 30.
[21] Compl. at ¶ 31.

14.    The Carpoffs caused DCSS to make each of the King Solarman Transfers in furtherance of and related to the Carpoff Ponzi Scheme.[22]

15.    On December 29, 2014, DCSD and Solarman Fund I executed a six-year Solar Equipment Lease ("***Solarman-Fund I Lease***"), which provided that DCSD would lease solar equipment from Solar Equipment Fund I.[23]

16.    DCSD made transfers to Solarman Fund I as reflected on Exhibit 2 to the Complaint ("***Solarman Fund I Transfers***").[24] For each of the Solarman Fund I Transfers, the Trustee identifies the date, the transferor, the transferee, and amount.[25]

17.    The Carpoffs caused DCSD to make each of the Solarman Fund I Transfers in furtherance of and related to the Carpoff Ponzi Scheme.[26]

18.    Additionally, in connection with the Solarman-Fund I Lease, the Carpoffs caused DCSD to make certain transfers to King Solarman, as reflected in the Complaint, Exhibit 3 ("***Lease Transfers***," and with the King Solarman Transfers and the Solarman Fund I Transfers, the "***Transfers***").[27] For each of the Lease Transfers, the Trustee identifies the date, the transferor, the transferee, and amount.[28]

19.    On September 1, 2015, DSCS and Solarman Fund II executed a six-year Solar Equipment Lease ("***Solarman-Fund II Lease***"), which provided that DCSD would lease solar equipment from Solar Equipment Fund II.[29]

## LEGAL STANDARD

"Rule 12(b)(6) motions are generally viewed with disfavor."[30] Dismissal of an action pursuant to Rule 12(b)(6) is proper only where it is beyond doubt that plaintiff can prove no set of

---

[22] Compl. at ¶ 32.
[23] Compl. at ¶ 33.
[24] Compl. at ¶ 34.
[25] Compl. Ex. 2.
[26] Compl. at ¶ 35.
[27] Compl. at ¶ 36.
[28] Compl. Ex. 3.
[29] Compl. at ¶ 37.
[30] *In re Faasoa*, 576 B.R. 631, 636 (Bankr. S.D. Cal. 2017).

facts in support of his claim which would entitle him to relief.[31]  This Court is to accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.[32] It is a "rare case" that warrants dismissal under Rule 12(b)(6).[33]

The Trustee's claim for "actual fraud" must comply with F.R.C.P. 9(b), which requires a party to "state with particularity the circumstances constituting fraud," although "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." However, a "more liberal standard for pleading fraud with particularity is applied in bankruptcy cases. This less stringent standard is predicated upon the fact it is often the trustee, a third party, who is pleading fraud based on second-hand information."[34] Moreover, "less particularity is required where plaintiff is not asserting that the fraud was against himself personally, but rather it was committed against a third party."[35]

## ARGUMENT

### I.    The Trustee Sufficiently Pleads Her Claims

The Trustee's Complaint asserts causes of action against the Moving Defendants for: (i) actual fraudulent transfer (Counts I, II, III, and IV); (ii) recovery of the transfers (Count V); (iii) quasi-contract for unjust enrichment seeking restitution (Count VI); and an accounting from Solarman Fund II (Count VII).

The Moving Defendants' MTD asserts that (a) Counts I, II, III and IV should be dismissed due to the failure to state a claim;[36] (b) Counts I, II, III, and IV should be dismissed as time barred;[37] (c) Counts I and III fail to identify the transfers applicable to the cause of action;[38] (d) Count II should be dismissed with respect to Solarman Fund I;[39] (e) Count V should be dismissed if Counts

---

[31] *Smith ex rel. Ests. of Bos. Chicken, Inc. v. Arthur Andersen L.L.P.,* 175 F. Supp. 2d 1180, 1195 (D. Ariz. 2001).
[32] *Id.*
[33] *In re Leatham*, 2017 WL 3704512, at *2 (Bankr. D. Idaho Aug. 24, 2017).
[34] *Boston Chicken*, 175 F. Supp. 2d at 1201 (internal citations omitted).
[35] *Id.* at 1202.
[36] MTD pp. 7-11.
[37] MTD pp. 9, 11.
[38] MTD pp. 9-10.
[39] MTD pg. 11.

I-IV are dismissed;[40] (f) Count VI should be dismissed for failing to allege an essential element of the cause of action;[41] and (g) Count VII should be dismissed.[42]

The Trustee has properly and adequately asserted her claims, and the Moving Defendants' MTD should be denied.

### A.  The Ponzi Presumption

As a threshold item, the Trustee has sufficiently pled the existence of the Carpoff Ponzi Scheme and is entitled to the "Ponzi presumption" under Ninth Circuit jurisprudence. Generally:

> A Ponzi scheme is an arrangement whereby an enterprise makes payments to investors from the proceeds of a later investment rather than from profits of the underlying business venture, as the investors expected. The fraud consists of transferring proceeds received from the new investors to previous investors, thereby giving other investors the impression that a legitimate profit making business opportunity exists, where in fact no such opportunity exists.[43]

Although Ponzi schemes are revealed by certain characteristics, such as payment of earlier investors with funds from later investors, "the manner in which such schemes are conducted is limited only by the imagination of the perpetrator."[44]

The "mere existence of a Ponzi scheme is sufficient to establish actual intent under § 548(a)(1) or a state's equivalent to that section."[45] Courts presume actual intent in relation to a Ponzi scheme because the debtor knows at the time of the transfer that the scheme ultimately must collapse.[46] This is the "***Ponzi Presumption of Actual Intent***."

The Trustee has alleged, with adequate specificity at this stage of the proceeding, that the Carpoff Ponzi Scheme – a Ponzi Scheme for purposes of the Ponzi Presumption – was perpetrated through the Debtors. The Trustee has made specific factual allegations, including that new investor money was used to pay old investor obligations and not sourced from profitable business

---

[40] MTD pp. 11-12.
[41] MTD pp. 12-13.
[42] MTD pp. 13-15.
[43] *In re Agric. Research & Tech. Grp., Inc.*, 916 F.2d 528, 531 (9th Cir. 1990).
[44] *In re LLS Am., LLC,* 2013 WL 3305393, *7 (Bankr. E.D. Wash. July 1, 2013) (internal citation omitted), R&R adopted as modified, 2013 WL 4480667 (E.D. Wash. Aug. 19, 2013); *see also In re Singh*, 2019 WL 1231146, *7-8 (B.A.P. 9th Cir. Mar. 14, 2019).
[45] *In re AFI Holding, Inc.,* 525 F.3d 700, 704 (9th Cir.2008) (internal citation omitted)
[46] *In re Nat'l Consumer Mortg., LLC,* 2013 WL 164247, at *11 (D. Nev. Jan. 14, 2013).

operations.  And the Trustee has alleged all necessary details of the Transfers (amount, date, and to / from), plus the Transfers' connection to the Carpoff Ponzi Scheme, *i.e.,* that the Transfers was made in furtherance of and related to the Carpoff Ponzi Scheme, including for the Carpoffs to loot the Debtors, benefit themselves, harm creditors, and further the perception that they and their businesses were successful.[47]

Therefore, the Trustee is entitled to the "Ponzi presumption," including the "Ponzi Presumption of Actual Intent."

**B.  The Trustee Sufficiently Pleads Counts I, II, III, and IV**

The Trustee sufficiently pleads her claim for "actual fraud" under Counts I, II, III and IV. The "mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud."[48] As explained above, the Trustee has made sufficient factual allegations to establish the Ponzi Presumption of Actual Intent.

Resting on the Carpoff Ponzi Scheme and looting allegations, and that Mr. Cung used the Moving Defendants to wrongfully funnel (*i.e.*, launder) monies to Jeff Carpoff, the Trustee alleges that the Transfers were made with actual intent to hinder, delay, or defraud the Debtors' creditors. This establishes the transferor's requisite mental state, at least to the "general" level required by Rule 9(b). The Trustee also identifies each transfer (date, amount, to / from), thereby meeting the "particularity" requirement.[49]  The Moving Defendants' contention that the Trustee "fails to identify the 'who, what, where, when, and how' of the allegedly fraudulent transactions" is untrue.[50]

In *In re Vaughan Co., Realtors*, the bankruptcy court denied a motion to dismiss where the

---

[47] Compl. at ¶¶ 16-20, 32, 35, Ex. 1, Ex. 2, Ex. 3.  *See Schneider v. Barnard*, 508 B.R. 533, 545 (E.D.N.Y. 2014) ("Surely transfers that enable a Ponzi scheme operator to profit from her own Ponzi scheme, and thereby perpetuate such a scheme, are 'in furtherance of' a Ponzi scheme."); *In re Agape World, Inc.*, 467 B.R. 556, 570 (Bankr. E.D.N.Y. 2012) ("The sole exception to the Ponzi scheme presumption is where the transfers at issue are so unrelated to the Ponzi scheme that the transfers do not serve to further the Ponzi scheme.").

[48] *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) (internal citations omitted); *see also In re AFI Holding, Inc.*, 525 F.3d 700, 704 (9th Cir. 2008)

[49] *In re Vaughan Co., Realtors*, 477 B.R. 206, 217 (Bankr. D.N.M. 2012).

[50] MTD pg. 9.

plaintiff-bankruptcy trustee alleged that the debtor was operating a Ponzi scheme and the payments to the defendants sought to be avoided were made as part of the alleged scheme.[51] Similarly, in *In re Sand Hill Capital Partners III, LLC*, the bankruptcy court denied a motion to dismiss where:

> The complaints allege the transfer dates, the amounts transferred, the method of transfer (e.g., wire), the name of the transferee, that Debtor was insolvent at the time of the transfers, and that Debtor received no value in exchange for the transfers. The complaints further allege that Debtor operated a Ponzi scheme ...; that the Ponzi scheme attracted large sums of money that was not used to invest in other entities on behalf of Debtor; and that the investors' money was used for [the insider's] personal benefit, to pay prior investors, and in furtherance of the Ponzi scheme.[52]

In *Automated Finance*, cited by the Moving Defendants, the court granted a motion to dismiss because the trustee had "not pled any facts that tie together the intent with the specific transfers being attacked."[53] Here, the Trustee has alleged, among other things, that the Carpoffs perpetrated the Carpoff Ponzi Scheme through DC Solar,[54] that the Carpoffs looted DC Solar,[55] that Mr. Cung – who had a close relationship with Jeff Carpoff – controlled all of the entities, that King Solarman received and then transferred (*i.e.,* laundered) large sums of monies to Jeff Carpoff and for the benefit of Jeff Carpoff (*e.g.,* to a casino),[56] and that the Transfers were made in furtherance of the Carpoff Ponzi Scheme (*i.e.,* they were part of Carpoff's looting of the Debtors).[57] The instant case is wholly different than *Automated Finance*; here, the Trustee has alleged specific facts tying the Transfers to the Carpoff Ponzi Scheme.

Additionally, the Moving Defendants disregard that the purpose of Rule 9's particularity requirement is: "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."[58] In a fraudulent transfer case such as here, it is the transferor's (the

---

[51] *Id.* at 220-221.
[52] 2010 WL 429622, *1 (Bankr. N.D. Cal. Oct. 25, 2010).
[53] *Seror v. Stone (In re Automated Finance Corp.)*, 2011 WL 10502417, *4 (Bankr. C.D. Cal. Jan. 25, 2011).
[54] Compl. at ¶¶ 16-18.
[55] Compl. at ¶ 18.
[56] Compl. at ¶¶ 29-31.
[57] Compl. at ¶¶ 32, 35
[58] *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).

Debtor's) intent that is the linchpin of the analysis—not the transferee's (Moving Defendant's) intent.[59] There is no requirement for the Moving Defendants to have engaged in any misconduct for the Trustee to recover.[60] The Trustee alleges the salient details plainly and thoroughly; the Moving Defendants are adequately apprised of the facts even under Rule 9.

The Trustee has met her pleading burden.

### C.  The Trustee Has Timely Brought This Action

The Moving Defendants argue that the Trustee's claim to avoid certain transfers are time barred because (i) for Counts I and III (Section 548), the transfers were made prior to February 3, 2019; and (ii) for Counts II and IV (Section 544 and Cal. Code § 3439), the transfers were made prior to January 22, 2017.[61] The Moving Defendants mis-state applicable law claiming the lookback period runs from the date a complaint is filed rather than from a debtor's petition date.

The Debtors filed their voluntary chapter 11 petition between January 31 and February 5, 2019 ("***Petition Date***"). Under Section 548, a trustee may avoid a transfer "that was made or incurred on or within 2 years before the date of the filing of the petition."[62]

Under Section 544(b)(1), a trustee may avoid a transfer "that is voidable under applicable law."[63] Under California law,[64] a fraudulent transfer action may be filed within four years of the transfer.[65] However, the analysis does not end there.

> Many courts, including the Ninth Circuit, have held that if the statute of limitations period governing a state-law fraudulent transfer action has not yet expired on the petition date (or the date the order for relief is entered, which is generally the same date), the trustee may bring the action under § 544(b), provided it is filed within the § 546(a) limitations period. This rule applies even if the state statute of limitations

---

[59] *See In re Nat'l Audit Defense Network*, 367 B.R. 207, 221 (Bankr. D. Nev. 2007) (noting that debtor's intent is key, and that "no collusion with the transferee is necessary").

[60] *In re LLS Am., LLC*, 2013 WL 3305393, *12 (Bankr. E.D. Wash. July 1, 2013), R&R adopted as modified 2013 WL 4480667 (E.D. Wash. Aug. 19, 2013).

[61] MTD pp. 9-11.

[62] 11 U.S.C. § 548(a)(1).

[63] 11 U.S.C. § 544(b)(1).

[64] The Moving Defendants agree that California law applies.  *See e.g.,* MTD at 7.

[65] Cal. Civil Code. §3439.09(a).

10

expired while the bankruptcy case was pending.

\*\*\*

Simply put, so long as the state-law fraudulent transfer claim exists on the petition date …, the state statutes of limitations cease to have any continued effect, and the only applicable statute of limitations for bringing the claim thereafter is within § 546(a). Accordingly, the reach back period is established on the petition date … and encompasses all transfers within the relevant period provided by state law. Trustee's Complaints were timely filed under § 546(a).[66]

Under Section 546(a), the Trustee has two years from the date of the Petition Date to file an avoidance action,[67] and under Section 544 and California law, the Trustee's look-back is for transfers made within four years of the Petition Date. Through Counts I and III (Section 548), the Trustee seeks to avoid the transfers made within two years of the Petition Date. Through Counts II and IV (Section 544 and California state law), the Trustee seeks to avoid the transfers made within four years of the Petition Date. The Trustee has timely brought her claims.

### D.  The Trustee Sufficiently Identifies the Transfers in Counts I and III

The Moving Defendants take issue with how the Trustee has plead her claims, arguing that they do not understand which transfers apply to which counts.[68]  This argument should be rejected.

Each transfer was made within four years of the Petition Date, and certain were made within two years of the Petition Date. Counts I and III, brought pursuant to Section 548, seek to avoid transfers made within two years of the Petition Date.[69] The Trustee has attached easily comprehensible exhibits to the Complaint, identifying the transferor, transferee, date, and amount, of each transfer, making it plain to the Moving Defendants (especially with all reasonable

---

[66] *In re EPD Inv. Co., LLC*, 523 B.R. 680, 685-86 (B.A.P. 9th Cir. 2015) (citing cases).

[67] And furthermore, the Trustee has obtained an extension of this deadline by Order of this Court. See ECF No. 2527.

[68] *See* MTD pp. 9-10 ("It is unclear which of these 'certain transfers' noted by the Trustee, are being sought after by the Complaint.")

[69] The Lease Transfers were made more than two years from the Petition Date. Therefore, the Trustee does not seek to avoid the Lease Transfers under Section 548.

11

inferences taken in the Trustee's favor) what transfers are applicable to which counts. The Moving Defendants' argument should be rejected.

### E. Solarman Fund I is Properly Named in Count II

The Moving Defendants assert that the Trustee erroneously includes Solarman Fund I as a defendant in Count II because Solarman Fund I was not the transferee of any of those transfers.[70] The Moving Defendants' argument should be rejected.

The Trustee may recover a transfer against both the initial transferee <u>or</u> the party for whose benefit the transfer was made.[71] Through Count II, the Trustee seeks to avoid, among other transfers, the 4-Year Lease Transfers. Through Count V, which seeks to recover the Transfers, the Trustee alleges that "Solarman Fund I was the party for whose benefit the 4-Year Lease Transfers were made."[72] Thus, the Trustee properly has given notice to Solarman Fund I that it is seeking to avoid those transfers (Count II) and recover them (Count V).

### F. The Trustee Sufficiently Pleads Count V

Because Counts I, II, III, and IV are properly alleged, Count V (recovery per Section 550) is properly alleged as well. The MTD presents no meaningful argument that Count V should be dismissed independent of the arguments relating to Counts I, II, III and IV. But either way, the Trustee has properly alleged that the King Solarman Transfers, the Solarman Fund I Transfers, and the Lease Transfers were made to the Moving Defendants, and that the Moving Defendants were either the "initial transferee" or the "party for whose benefit" the transfers were made under Section 550 of the Code.

---

[70] MTD, pg.11.
[71] 11 U.S.C. § 550(a)(1).
[72] Compl. at ¶ 59.

12

### G.  The Trustee Sufficiently Pleads Count VI

Through Count VI, the Trustee asserts a claim for "Quasi Contract for Unjust Enrichment Seeking Restitution." The Moving Defendants argue that this claim should be dismissed because the Trustee supposedly fails to: (i) allege that the Moving Defendants knew or should have known of facts constituting unjust enrichment; and (ii) identify the applicable transfers.[73]

<u>First</u>, the Trustee sufficiently alleges all requisite facts.  The purpose of a quasi-contract claim is to restore the aggrieved party to his former position by return of the thing or its equivalent in money; the defendant has an obligation imposed by equity to provide restitution because it was unjustly enriched.[74]  The Trustee has alleged that Mr. Cung – who had a close relationship with Jeff Carpoff and controlled the Moving Defendants – participated in the looting of the Debtors for the Carpoffs' personal benefit (*e.g.,* to a casino) and in furtherance of and related to the Carpoff Ponzi Scheme,[75] and that it would be unjust to permit the Moving Defendants to retain the benefit of the transfers.[76]  The Moving Defendants' argument that they are saved by their supposed "good faith" fails.  At this stage of the proceeding, the Trustee's allegations are presumed to be true, with all inferences in her favor; the Moving Defendants' naked assertion that they are "bona-fide purchasers" or "persons who innocently accepted money from a wrongdoer," are entitled to no weight (and contradict the Complaint's allegations).  As other courts have ruled, this matter is a question of fact that is not to be determined at this stage.[77]

<u>Second</u>, the Trustee properly and adequately identifies the transfers applicable to Count VI. The Trustee's exhibits, attached to the Complaint, provide the date, amount, transferor, and transferee, for each transfer. Furthermore, if there were any doubt, the Complaint's "Wherefore

---

[73] MTD pp. 12-13.

[74] *Jordan v. Wonderful Citrus Packing LLC*, 2018 WL 4350080, *4 (E.D. Cal. Sept. 10, 2018) (*citing Unilab Corp. v. Angeles-IPA*, 198 Cal. Rptr. 3d 211, 224 (Cal. Ct. App. 2016) ("[A]n implied-in-law contract or quasi-contract is not based on the intention of the parties, but arises from a legal obligation that is imposed on the defendant.").

[75] Compl. at ¶¶ 26, 28-31.

[76] Compl. at ¶ 64.

[77] *See e.g., Welborne v. Ryman-Carroll Found.*, 231 Cal.Rptr.3d 806, 814 (Cal. Ct. App. 2018).

13

Clause" identifies the restitution that each Moving Defendant should be ordered to provide to the Trustee, breaking it down with specificity.[78]

Third, the Moving Defendants make a fly-specking argument that the Trustee has alleged that while DCSD conferred the benefit, it was at the expense of DCSS.[79]  The Trustee did make such an allegation, a scrivener's error, in her Complaint, but as noted throughout the Complaint, and in the exhibits to the Complaint which trump the pleading,[80] both DCSD and DCSS made the transfers to the Moving Defendants.[81] Thus, the Trustee has shown that both DCSD and DCSS conferred a benefit upon the Moving Defendants, and that benefit was obtained at the expense of DCSD and DCSS. If the Court deems it necessary, the Trustee requests leave to amend Count VI to correct her scrivener's error, by interlineation or otherwise.

As to Count VI, the Moving Defendants' MTD should be denied.

**H.  The Trustee Sufficiently Pleads Count VII**

Through Count VII, the Trustee seeks an Accounting against Solarman Fund II of any monies received directly or indirectly from the Debtors.[82] The Moving Defendants argue that the Trustee: (i) pleads no other claim against Solarman Fund II; (ii) pleads no relationship between DC Solar and Solarman Fund II; (iii) does not allege monies owed by Solarman Fund II; and (iv) has less burdensome remedies.  The Moving Defendants' arguments should be rejected.

First, to state a claim for accounting, the Trustee must only allege: (1) a relationship or other circumstances appropriate to the remedy; and (2) a balance due from the defendant to the plaintiff that can only be ascertained by an accounting.[83] The Trustee has satisfied her obligation. The Trustee explains the Carpoff Ponzi Scheme, alleges that Mr. Cung (Solarman Fund II's

---

[78] Compl. p. 11.
[79] MTD p. 13.
[80] *Van Hook v. Curry*, 2009 WL 773361, *3 (N.D. Cal. Mar. 23, 2009) (citing cases).
[81] *See* Compl. Exs. 1, 2, 3.
[82] Compl. at ¶¶ 66-77.
[83] *Brea v. McGlashan*, 39 P.2d 877, 880-81 (Cal. Ct. App. 1934).

controlling person) had a close relationship with Jeff Carpoff, and that Jeff Carpoff and Mr. Cung worked together to loot monies from the Debtors.[84] The Trustee explains that the Solarman Fund II Lease was executed in connection with a complex tax-equity transaction, pursuant to which the investor-member in Solarman Fund II sought to leverage its investment to secure a tax benefit.[85] And the Trustee alleges that she may recover payments made to or for the benefit of Solarmore Fund II.[86] These circumstances indicate monies owed to the Debtors and that the Trustee needs an accounting to understand those specific amounts, particularly given the Moving Defendants' roles in laundering money.  Especially at this stage, the Trustee has met her burden.

Second, a claim for accounting sounds in equity, and "may be sought where the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable."[87] The Trustee is an after-the-fact fiduciary tasked with investigating the Debtors' pre-petition activities, including the Carpoff Ponzi Scheme. The Trustee alleges that the Debtors' relationship with Cung, and Solarman Fund II, was multi-layered and complicated. The Trustee alleges that she been unable to ascertain through review of the Debtors' records: (i) the extent of payments from the Debtors, directly or indirectly, to Solarman Fund II; and (ii) DCSD's rights under the Solarman Fund II Lease.[88] The Trustee has no adequate legal remedy, demanding a fixed sum is simply impracticable, and thus an equitable accounting is the Trustee's appropriate remedy.

### IN THE ALTERNATIVE, REQUEST FOR LEAVE TO RE-PLEAD

The Trustee has properly pled her Complaint and the Moving Defendants' MTD should be denied. However, in the alternative and if the Court finds the Complaint lacking in any respect,

---

[84] Compl. at ¶¶ 26, 28-31.
[85] Compl. at ¶ 70.
[86] Compl. at ¶73.
[87] *Civic Western Corp. v. Zila Indus., Inc.*, 66 Ca.App.3d 1, 14 (1977) (internal citation omitted).
[88] Compl. at ¶ 72.

the Trustee respectfully requests leave to re-plead and file an amended complaint.[89]  The Trustee has acted in good faith, without delay, and expects she can provide additional facts if directed by the Court (although she asserts it is wholly unnecessary at this stage).  An amended complaint would not prejudice the Moving Defendants and this Complaint is the Trustee's original complaint commencing this action.

**WHEREFORE**, the Trustee prays for and demands order as follows:

(1) Denying the Moving Defendants' motion to dismiss.

(2) Alternatively, granting the Trustee leave to amend her Complaint.

In addition, the Trustee requests from the Court any such other and further relief, equitable or otherwise, that this Court deems just and proper.

DATED: April 14, 2021.

**HARTMAN & HARTMAN**

_/s/ Jeffrey L. Hartman, Esq._
Jeffrey L. Hartman, Esq., Attorney for Plaintiff
Christina W. Lovato

**MELAND BUDWICK, P.A.**

_/s/ Kevin Paule, Esq._
Michael S. Budwick, Esq., Admitted Pro Hac Vice
Solomon B. Genet, Esq., Admitted Pro Hac Vice
Gil Ben-Ezra, Esq., Admitted Pro Hac Vice
Kevin Paule, Esq., Admitted Pro Hac Vice
Attorneys for Plaintiff Christina W. Lovato

---

[89] _Edwards v. Leaders in Comm. Alt., Inc_., 2021 WL 1235840, *2 (9th Cir. Apr. 2, 2021).

## **CERTIFICATE OF SERVICE**

I hereby that on April 14, 2021, I caused to be served for following document (s):

**TRUSTEE'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS ADVERSARY COMPLAINT [ECF No. 7] FILED BY KING SOLARMAN, INC., KING SOLARMAN (INDION) FUND I, LLC AND KING SOLARMAN (INDION) FUND II, LLC**

I caused to be served the above-named document (s) as indicated below:

✔ a.  Via ECF to:

- **MICHAEL S BUDWICK**    mbudwick@melandbudwick.com, ltannenbaum@melandbudwick.com; mrbnefs@yahoo.com; ltannenbaum@ecf.courtdrive.com; ltannenbaum@ecf.courtdrive.com

- **CHRISTOPHER PATRICK BURKE**    attycburke@charter.net

- **JEFFREY L HARTMAN**    notices@bankruptcyreno.com abg@bankruptcyreno.com

- **ALEXANDER J. LEWICKI**    alewicki@diemerwei.com

- **CHRISTINA W. LOVATO**    trusteelovato@att.net NV26@ecfcbis.com

- **KEVIN C. PAULE**    kpaule@melandbudwick.com ltannenbaum@melandbudwick.com mrbnefs@yahoo.com ltannenbaum@ecf.courtdrive.com

✔ b.  Via United States Mail to:

**KATHRYN S. DIEMER**
55 S MARKET STREET, SUITE 1420
SAN JOSE, CA 95113

DATED: April 14, 2021.                    */s/ Michael Budwick, Esq.*
                                                        Michael S. Budwick, Esq.

17