Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
**HARTMAN & HARTMAN**
510 W. Plumb Lane, Suite B
Reno, NV 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com

Michael S. Budwick, Esq. #938777 – Admitted *Pro Hac Vice*
Solomon B. Genet, Esq. #617911 – Admitted *Pro Hac Vice*
Gil Ben-Ezra, Esq. #118089 – Admitted *Pro Hac Vice*
Kevin Paule, Esq. #125276 – Admitted *Pro Hac Vice*
**MELAND BUDWICK, P.A.**
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
T: (305) 358-6363
F: (305) 358-1221
mbudwick@melandbudwick.com
sgenet@melandbudwick.com
gbenezra@melandbudwick.com
kpaule@melandbudwick.com

Attorneys for Christina W. Lovato, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>DOUBLE JUMP, INC.<br><br>       Debtor.<br><br>Affects:<br>☒ DC Solar Solutions, Inc.<br>☒ DC Solar Distribution, Inc.<br>☒ DC Solar Freedom, Inc.<br>☒ Double Jump, Inc. | Lead Case No.: BK-19-50102-gs<br>(Chapter 7)<br><br>Substantially Consolidated with:<br><br>| 19-50130-gs | DC Solar Solutions, Inc. |<br>\| 19-50131-gs \| DC Solar Distribution, Inc. \|<br>\| 19-50135-gs \| DC Solar Freedom, Inc. \| |
| CHRISTINA W. LOVATO,<br><br>       Plaintiff,<br>v.<br><br>KING SOLARMAN, INC., CHIANG LIAN CUNG a/k/a MICHAEL CUNG, KING SOLARMAN (INDION) FUND I, LLC and KING SOLARMAN (INDION) FUND II, LLC,<br><br>       Defendants. | Adversary No.: 21-05028-gs<br><br>**TRUSTEE'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS ADVERSARY COMPLAINT FILED BY MICHAEL CUNG [ECF No. 9]**<br><br>**Hearing Date:** April 29, 2021<br><br>**Hearing Time:** 9:30 a.m. |

Christina W. Lovato, in her capacity as the chapter 7 trustee ("*Trustee*" or "*Plaintiff*") for the bankruptcy estates of DC Solar Solutions, Inc. ("*DCSS*"), DC Solar Distribution, Inc.

1

("***DCSD***"), DC Solar Freedom, Inc. ("***DCSF***", and with DCSD and DCSS, "***DC Solar***") and Double Jump, Inc. ("***DJ***," and with DC Solar, the "***Debtors***"), responds in opposition to the Motion to Dismiss Adversary Complaint ("***MTD***") filed by Defendant Chiang Lian Cung a/k/a Michael Cung ("***Defendant***" or "***Cung***") [ECF 9] and states as follows.

## PRELIMINARY STATEMENT

The Trustee is an after-the-fact fiduciary appointed by the Office of the United States Trustee. In her Complaint [ECF No. 1], the Trustee sets forth facts explaining the Ponzi scheme perpetrated by Jeff Carpoff and Paulette Carpoff ("***Carpoffs***") through DC Solar and other entities ("***Carpoff Ponzi Scheme***"). The Trustee explains the timeline, the purpose, and the roles of certain players connected to the Carpoff Ponzi Scheme. The Trustee explains that a purpose of the Carpoff Ponzi Scheme was for the Carpoffs to loot the Debtors for their personal benefit. The Trustee alleges that the specific transfers for the benefit of the Defendant were in furtherance of and related to this purpose and the Carpoff Ponzi Scheme. And the Trustee identifies: (1) the date of the transfers; (2) the amount of the transfers; (3) the specific debtor-transferor; and (4) the transferee. The Trustee has satisfied her burden under Fed.R.Civ.P. 8 and 9 (as applicable) for each count of the Complaint.

The Defendant's characterization of the Complaint is inaccurate. The Trustee has set forth a "short and plan statement of the claim" showing she is entitled to relief, more than sufficiently complying with the pleading requirements. This is not the "rare case" that warrants dismissal under Fed.R.Civ.P. 12(b)(6), and the Defendant's MTD should be denied.

## STATEMENT OF FACTS

1. The Complaint sets forth the nature of DC Solar's purported business and describes the Ponzi scheme perpetrated by certain of DC Solar's former insiders.[1]

2. DC Solar was engaged in a business related to manufacturing, marketing, selling, and leasing mobile solar generators ("***MSGs***").[2]

---

[1] Compl. at ¶¶ 8-21.
[2] Compl. at ¶ 10.

2

3. Generally, Debtor-DCSS would manufacture and sell MSGs for $150,000 each.[3] The buyers were typically tax equity funds owned by a financial investor seeking investment federal tax credits.[4] The buyers would provide DCSS with a down payment and execute a promissory note for the remaining balance of the MSGs.[5] Then, the buyers would lease the MSGs to DCSS's affiliate, DCSD, which in turn purported to sub-lease the MSG to a third-party end-user/sub-lessee.[6] The end-user's/sub-lessee's lease payments were intended (purportedly) to cover the interest payments on the promissory note.[7]

4. Over the years, DCSS closed over two dozen transactions, purportedly selling over 15,000 MSGs and generating hundreds of millions of dollars of revenue.[8]

5. However, certain of DC Solar's insiders, including the Carpoffs, were also perpetrating a Ponzi scheme through DC Solar and other entities.[9] As alleged in the Complaint:

> The Carpoffs caused DC Solar to transfer monies obtained from new buyers of MSGs to cover obligations owed to earlier buyers. This was contrary to the Carpoffs' representations to the financial investors that sub-lessee revenue would pay those obligations. Moreover, the Carpoffs misrepresented to the financial investors the number of MSGs that DC Solar manufactured, ultimately claiming in 2018 that the figure exceeded 15,000 when it was actually far less. Moreover, although the Carpoffs represented to the financial investors that DC Solar had a series of sub-lessees willing to pay to utilize the MSGs, some sub-leases were real but others were not.
>
> Further, the Carpoffs looted DC Solar to, among other things, fund their own lavish lifestyle, including through casino gambling, buying a semi-pro baseball team, the use of private jets and the purchase of real and personal property (such as automobiles). And the Carpoffs looted DC Solar to, among other things, pay-off co-conspirators and make payments such as marketing payments (legitimate or illegitimate) to third-parties. This all was intended, in material part, to further the Carpoff Ponzi Scheme and create the perception that DC Solar was profitable.[10]

---

[3] Compl. at ¶ 11.
[4] Compl. at ¶ 11.
[5] Compl. at ¶ 11.
[6] Compl. at ¶ 11.
[7] Compl. at ¶ 11.
[8] Compl. at ¶ 15.
[9] Compl. at ¶ 16.
[10] Compl. at ¶¶ 17-18.

6. King Solarman, Inc. ("**King Solarman**") was a DC Solar vendor.[11]

7. Cung is the sole shareholder and CEO of King Solarman.[12] Cung is also the controlling person of King Solarman Management, LLC, which is the managing member of King Solarman (Indion) Fund I ("**Solarman Fund I**") and King Solarman (Indion) Fund II ("**Solarman Fund II**," together with King Solarman and Solarman Fund I, the "**Corporate Defendants**").[13]

8. Cung had a close relationship with Jeff Carpoff.[14]

9. Beginning no later than December 2011, Jeff Carpoff caused DCSS to begin making transfers to King Solarman.[15]

10. Within four years of the Petition Date, DCSS made transfers to King Solarman as reflected on Exhibit 1 of the Complaint (the "**King Solarman Transfers**").[16] For each of the King Solarman Transfers, Exhibit 1 identifies the date of the transfer, the transferor, the transferee, and the amount.[17]

11. Cung is the party for whose benefit the King Solarman Transfers were made.[18]

12. Beginning no later than January 2014, King Solarman began transferring, both directly and indirectly, large sums of monies to non-debtor entities affiliated with Jeff Carpoff.[19] For example, on or around January 2, 2014, King Solarman sent $600,000 to a non-debtor entity affiliated with Jeff Carpoff.[20]

13. Similarly, King Solarman used intermediaries to send payments to non-debtor entities affiliated with Jeff Carpoff, including through an entity named "YT International, Inc.," which shares the same address as King Solarman.[21]

---

[11] Compl. at ¶ 25.
[12] Compl. at ¶ 26.
[13] Compl. at ¶ 3.
[14] Compl. at ¶ 26.
[15] Compl. at ¶ 27.
[16] Compl. at ¶ 28.
[17] Compl. Ex. 1.
[18] Compl. at ¶ 57.
[19] Compl. at ¶ 29.
[20] Compl. at ¶ 29
[21] Compl. at ¶ 30.

14. King Solarman also made payments to third-parties on behalf of Jeff Carpoff, looting the Debtors. For example, on or about September 10, 2015, King Solarman wired $80,000 to the Mandalay Bay Casino "to further benefit Jeff Carpoff."[22]

15. The Carpoffs caused DCSS to make each of the King Solarman Transfers in furtherance of and related to the Carpoff Ponzi Scheme.[23]

## LEGAL STANDARD

"Rule 12(b)(6) motions are generally viewed with disfavor."[24] Dismissal of an action pursuant to Rule 12(b)(6) is proper only where it is beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.[25] This Court is to accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.[26] It is a "rare case" that warrants dismissal under Rule 12(b)(6).[27]

The Trustee's claim for "actual fraud" must comply with F.R.C.P. 9(b), which requires a party to "state with particularity the circumstances constituting fraud," although "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." However, a "more liberal standard for pleading fraud with particularity is applied in bankruptcy cases. This less stringent standard is predicated upon the fact it is often the trustee, a third party, who is pleading fraud based on second-hand information."[28] Moreover, "less particularity is required where plaintiff is not asserting that the fraud was against himself personally, but rather it was committed against a third party."[29]

## ARGUMENT

### I. The Trustee Sufficiently Pleads Her Claims

The Trustee's Complaint asserts causes of action against Cung for: (i) actual fraudulent

---

[22] Compl. at ¶ 31.
[23] Compl. at ¶ 32.
[24] *In re Faasoa*, 576 B.R. 631, 636 (Bankr. S.D. Cal. 2017).
[25] *Smith ex rel. Ests. of Bos. Chicken, Inc. v. Arthur Andersen L.L.P.,* 175 F. Supp. 2d 1180, 1195 (D. Ariz. 2001).
[26] *Id.*
[27] *In re Leatham*, 2017 WL 3704512, *2 (Bankr. D. Idaho Aug. 24, 2017).
[28] *Boston Chicken*, 175 F. Supp. 2d at 1201 (internal citations omitted).
[29] *Id.* at 1202.

5

transfer (Counts I and II); (ii) recovery of the transfers (Count V); and (iii) quasi-contract for unjust enrichment seeking restitution (Count VI).

Cung's MTD asserts that the causes of action should be dismissed for failure to state a cause of action.

The Trustee has properly and adequately asserted her claims, and the Cung's MTD should be denied.

### A. The Ponzi Presumption

As a threshold item, the Trustee has sufficiently pled the existence of the Carpoff Ponzi Scheme and thus is entitled to the "Ponzi presumption" under Ninth Circuit jurisprudence. Generally:

> A Ponzi scheme is an arrangement whereby an enterprise makes payments to investors from the proceeds of a later investment rather than from profits of the underlying business venture, as the investors expected. The fraud consists of transferring proceeds received from the new investors to previous investors, thereby giving other investors the impression that a legitimate profit making business opportunity exists, where in fact no such opportunity exists.[30]

Although Ponzi schemes are revealed by certain characteristics, such as payment of earlier investors with funds from later investors, "the manner in which such schemes are conducted is limited only by the imagination of the perpetrator."[31]

The "mere existence of a Ponzi scheme is sufficient to establish actual intent under § 548(a)(1) or a state's equivalent to that section."[32] Courts presume actual intent in relation to a Ponzi scheme because the debtor knows at the time of the transfer that the scheme ultimately must collapse.[33] This is the "***Ponzi Presumption of Actual Intent***."

The Trustee has alleged, with adequate specificity at this stage of the proceeding, that the Carpoff Ponzi Scheme – a Ponzi Scheme for purposes of the Ponzi Presumption – was perpetrated through the Debtors. The Trustee has made specific factual allegations, including that new investor

---

[30] *In re Agric. Research & Tech. Grp., Inc.*, 916 F.2d 528, 531 (9th Cir. 1990).
[31] *In re LLS Am., LLC,* 2013 WL 3305393, *7 (Bankr. E.D. Wash. July 1, 2013) (internal citation omitted), R&R adopted as modified, 2013 WL 4480667 (E.D. Wash. Aug. 19, 2013); *see also In re Singh*, 2019 WL 1231146, *7-8 (B.A.P. 9th Cir. Mar. 14, 2019).
[32] *In re AFI Holding, Inc.,* 525 F.3d 700, 704 (9th Cir.2008) (internal citation omitted)
[33] *In re Nat'l Consumer Mortg., LLC*, 2013 WL 164247, at *11 (D. Nev. Jan. 14, 2013).

6

money was used to pay old investor obligations and not sourced from profitable business operations. And the Trustee has alleged all necessary details of the King Solarman Transfers (amount, date, and to / from), plus the King Solarman Transfers' connection to the Carpoff Ponzi Scheme, *i.e.,* that the King Solarman Transfers was made in furtherance of and related to the Carpoff Ponzi Scheme, including for the Carpoffs to loot the Debtors, benefit themselves, harm creditors, and further the perception that they and their businesses were successful.[34]

Therefore, the Trustee is entitled to the "Ponzi presumption," including the "Ponzi Presumption of Actual Intent."

### B. The Trustee Sufficiently Pleads Counts I, II, III, and IV

The Trustee sufficiently pleads her claim for "actual fraud" under Counts I, II, III and IV.[35]

The "mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud."[36] As explained above, the Trustee has made sufficient factual allegations to establish the Ponzi Presumption of Actual Intent.

Resting on the Carpoff Ponzi Scheme and looting allegations, and that Cung used the Corporate Defendants to wrongfully funnel (*i.e.*, launder) monies to Jeff Carpoff, the Trustee alleges that the Transfers were made with actual intent to hinder, delay, or defraud the Debtors' creditors. This establishes the transferor's requisite mental state, at least to the "general" level required by Rule 9(b). The Trustee also identifies each transfer (date, amount, to / from), thereby meeting the "particularity" requirement.[37]

In *In re Vaughan Co., Realtors*, the bankruptcy court denied a motion to dismiss where the

---

[34] Compl. at ¶¶ 16-20, 32, 35, Ex. 1, Ex. 2, Ex. 3. *See Schneider v. Barnard*, 508 B.R. 533, 545 (E.D.N.Y. 2014) ("Surely transfers that enable a Ponzi scheme operator to profit from her own Ponzi scheme, and thereby perpetuate such a scheme, are 'in furtherance of' a Ponzi scheme."); *In re Agape World, Inc.*, 467 B.R. 556, 570 (Bankr. E.D.N.Y. 2012) ("The sole exception to the Ponzi scheme presumption is where the transfers at issue are so unrelated to the Ponzi scheme that the transfers do not serve to further the Ponzi scheme.").

[35] Only Counts I and III are alleged against Cung. However, Cung's MTD seeks to dismiss Counts I, II, III, and IV. Cung may not seek dismissal of the causes of action that are not asserted against him.

[36] *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) (internal citations omitted); *see also In re AFI Holding, Inc.*, 525 F.3d 700, 704 (9th Cir. 2008)

[37] *In re Vaughan Co., Realtors*, 477 B.R. 206, 217 (Bankr. D.N.M. 2012).

7

plaintiff-bankruptcy trustee alleged that the debtor was operating a Ponzi scheme and the payments to the defendants sought to be avoided were made as part of the alleged scheme.[38] Similarly, in *In re Sand Hill Capital Partners III, LLC*, the bankruptcy court denied a motion to dismiss where:

> The complaints allege the transfer dates, the amounts transferred, the method of transfer (e.g., wire), the name of the transferee, that Debtor was insolvent at the time of the transfers, and that Debtor received no value in exchange for the transfers. The complaints further allege that Debtor operated a Ponzi scheme ...; that the Ponzi scheme attracted large sums of money that was not used to invest in other entities on behalf of Debtor; and that the investors' money was used for [the insider's] personal benefit, to pay prior investors, and in furtherance of the Ponzi scheme.[39]

In *Automated Finance*, cited by Cung, the court granted a motion to dismiss because the trustee had "not pled any facts that tie together the intent with the specific transfers being attacked."[40] Here, the Trustee has alleged, among other things, that the Carpoffs perpetrated the Carpoff Ponzi Scheme through DC Solar,[41] that the Carpoffs looted DC Solar,[42] that Cung – who had a close relationship with Jeff Carpoff – controlled all of the entities, that King Solarman received and then transferred (*i.e.,* laundered) large sums of monies to Jeff Carpoff and for the benefit of Jeff Carpoff (*e.g.,* to a casino),[43] and that the King Solarman Transfers were made in furtherance of the Carpoff Ponzi Scheme (*i.e.,* they were part of Carpoff's looting of the Debtors).[44] The instant case is wholly different than *Automated Finance*; here, the Trustee has alleged specific facts tying the King Solarman Transfers to the Carpoff Ponzi Scheme.

Additionally, the Defendant disregards that the purpose of Rule 9's particularity requirement is: "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."[45] In a fraudulent transfer case such as here, it is the transferor's (the

---

[38] *Id.* at 220-221.
[39] 2010 WL 429622, *1 (Bankr. N.D. Cal. Oct. 25, 2010).
[40] *Seror v. Stone (In re Automated Finance Corp.)*, 2011 WL 10502417, *4 (Bankr. C.D. Cal. Jan. 25, 2011).
[41] Compl. at ¶¶ 16-18.
[42] Compl. at ¶ 18.
[43] Compl. at ¶¶ 29-31.
[44] Compl. at ¶ 32.
[45] *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).

8

Debtor's) intent that is the linchpin of the analysis—not the transferee's intent.[46] There is no requirement for the Defendant to have engaged in any misconduct for the Trustee to recover.[47] The Trustee alleges the salient details plainly and thoroughly; the Defendant is adequately apprised of the facts even under Rule 9's heightened pleading standard.

The Trustee has met her pleading burden.

### C. The Trustee Sufficiently Pleads Count V

Because Counts I, II, III, and IV are properly alleged, Count V (recovery per Section 550) is properly alleged as well. The MTD presents no meaningful argument that Count V should be dismissed independent of the arguments relating to Counts I, II, III and IV.  But either way, the Trustee has properly alleged that the King Solarman Transfers were made to the Corporate Defendants, and that Cung was the "party for whose benefit" the King Solarman Transfers were made under Section 550 of the Code.[48]

### D. The Trustee Sufficiently Pleads Count VI

Count VI of the Trustee's Complaint asserts Cung's liability for "Quasi Contract for Unjust Enrichment Seeking Restitution." Cung argues that this claim should be dismissed because the Trustee fails to sufficiently allege this cause of action.[49]

The Trustee sufficiently alleges all necessary facts.  The purpose of a quasi-contract claim is to restore the aggrieved party to his former position by return of the thing or its equivalent in money; the defendant has an obligation imposed by equity to provide restitution because it was

---

[46] *See In re Nat'l Audit Defense Network*, 367 B.R. 207, 221 (Bankr. D. Nev. 2007) (noting that debtor's intent is key, and that "no collusion with the transferee is necessary").
[47] *In re LLS Am., LLC*, 2013 WL 3305393, *12 (Bankr. E.D. Wash. July 1, 2013), R&R adopted as modified 2013 WL 4480667 (E.D. Wash. Aug. 19, 2013).
[48] Compl. at ¶ 57.
[49] MTD pp. 3-4.

9

unjustly enriched.[50] The Trustee has alleged that Cung – who had a close relationship with Jeff Carpoff and controlled the Corporate Defendants – participated in the looting of the Debtors for the Carpoffs' personal benefit (*e.g.,* to a casino) and in furtherance of and related to the Carpoff Ponzi Scheme,[51] and that it would be unjust to permit Cung to retain the benefit of the transfers.[52]

As to Count VI, Cung's MTD should be denied.

## IN THE ALTERNATIVE, REQUEST FOR LEAVE TO RE-PLEAD

The Trustee has properly pled her Complaint and Cung's MTD should be denied. However, in the alternative and if the Court finds the Complaint lacking in any respect, the Trustee respectfully requests leave to re-plead and file an amended complaint.[53] The Trustee has acted in good faith, without delay, and expects she can provide additional facts if directed by the Court (although she asserts it is wholly unnecessary at this stage). An amended complaint would not prejudice Cung and this is the Trustee's original complaint commencing this action.

**WHEREFORE**, the Trustee prays for and demands order as follows:

(1) Denying the Defendant's motion to dismiss.

(2) Alternatively, granting the Trustee leave to amend her Complaint.

In addition, the Trustee requests from the Court any such other and further relief, equitable or otherwise, that this Court deems just and proper.

---

[50] *Jordan v. Wonderful Citrus Packing LLC*, 2018 WL 4350080, *4 (E.D. Cal. Sept. 10, 2018) (*citing Unilab Corp. v. Angeles-IPA*, 198 Cal. Rptr. 3d 211, 224 (Cal. Ct. App. 2016) ("Unlike an implied-in-fact contract, an implied-in-law contract or quasi-contract is not based on the intention of the parties, but arises from a legal obligation that is imposed on the defendant."); *Hillco Inc. v. Stein*, 82 Cal. App. 3d 322, 327 (Cal. Ct. App. 1978) ("A contractual obligation is consensual in origin. A quasi-contractual obligation is not. It is one imposed by equity to prevent unjust enrichment.")).
[51] Compl. at ¶¶ 26, 28-31.
[52] Compl. at ¶ 64.
[53] *Edwards v. Leaders in Comm. Alt., Inc.*, 2021 WL 1235840, *2 (9th Cir. Apr. 2, 2021).

DATED: April 14, 2021.

**HARTMAN & HARTMAN**

*/s/ Jeffrey L. Hartman, Esq.*
Jeffrey L. Hartman, Esq., Attorney for Plaintiff
Christina W. Lovato

**MELAND BUDWICK, P.A.**

*/s/ Michael S. Budwick, Esq.*
Michael S. Budwick, Esq., Admitted Pro Hac Vice
Solomon B. Genet, Esq., Admitted Pro Hac Vice
Gil Ben-Ezra, Esq., Admitted Pro Hac Vice
Kevin Paule, Esq., Admitted Pro Hac Vice
Attorneys for Plaintiff Christina W. Lovato

## CERTIFICATE OF SERVICE

I hereby that on April 14, 2021, I caused to be served for following document (s):

**TRUSTEE'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS ADVERSARY COMPLAINT FILED BY MICHAEL CUNG [ECF No. 9]**

I caused to be served the above-named document (s) as indicated below:

✔ a. Via ECF to:

- **MICHAEL S BUDWICK**   mbudwick@melandbudwick.com, ltannenbaum@melandbudwick.com; mrbnefs@yahoo.com; ltannenbaum@ecf.courtdrive.com; ltannenbaum@ecf.courtdrive.com

- **CHRISTOPHER PATRICK BURKE**   attycburke@charter.net

- **JEFFREY L HARTMAN**   notices@bankruptcyreno.com abg@bankruptcyreno.com

- **ALEXANDER J. LEWICKI**   alewicki@diemerwei.com

- **CHRISTINA W. LOVATO**   trusteelovato@att.net NV26@ecfcbis.com

- **KEVIN C. PAULE**   kpaule@melandbudwick.com ltannenbaum@melandbudwick.com mrbnefs@yahoo.com ltannenbaum@ecf.courtdrive.com

11

| | |
|---|---|
| 1 | ✔ b. Via United States Mail to: |

**KATHRYN S. DIEMER**
55 S MARKET STREET, SUITE 1420
SAN JOSE, CA 95113

DATED: April 14, 2021.                    <u>*/s/ Michael Budwick, Esq.*</u>
                                                      Michael S. Budwick, Esq.