

_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
June 11, 2021

<br>

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Lead Case No.: BK-19-50102-gs |
| DOUBLE JUMP, INC., | Chapter 7 |
| Debtor(s). | |

Substantively Consolidated With:

| 19-50130-gs | DC Solar Solutions, Inc. |
|---|---|
| 19-50131-gs | DC Solar Distribution, Inc. |
| 19-50135-gs | DC Solar Freedom, Inc. |

Affects:
 _X_ DC Solar Solutions, Inc.
 _X_ DC Solar Distribution, Inc.
 _X_ DC Solar Freedom, Inc.
 _X_ Double Jump, Inc.

CHRISTINA W. LOVATO,

        Plaintiff(s),

    v.

KING SOLARMAN, INC., CHIANG LIAN
CUNG a/k/a MICHAEL CUNG, KING
SOLARMAN (INDION) FUND I, LLC, AND
KING SOLARMAN (INDION) FUND II,
LLC,

        Defendant(s).

Adv. Proc. No. 21-05028-gs

## MEMORANDUM DECISION ON MOTION TO DISMISS

Defendants King Solarman, Inc., King Solarman (Indion) Fund I, LLC ("Solarman Fund I"), and King Solarman (Indion) Fund II, LLC ("Solarman Fund II") (collectively, "Defendants") move to dismiss plaintiff chapter 7 trustee Christina Lovato's complaint ("Complaint") under Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012, for a failure to state a claim.

### Background

The trustee attached to the Complaint a breakdown of various payments allegedly made by the debtors to Defendants and seeks to recover the following amounts from Defendants:

| Transferor | Transferee | Total Transferred |
|---|---|---|
| DC Solar Solutions, Inc. | King Solarman, Inc. | $40,582,988.70 |
| DC Solar Distribution, Inc. | King Solarman Indion Fund I | $ 2,242,890.00 |
| DC Solar Distribution, Inc. | King Solarman Indion Fund II | $ 517,590.00[1] |

The trustee asserts several claims for fraudulent transfers under state law and the Bankruptcy Code to recover the roughly $40 million in transfers from debtor DC Solar Solutions, Inc. ("Solutions") to King Solarman, Inc. made between October 13, 2105 and November 6, 2018.  King Solarman also received roughly $500,000 from debtor DC Solar Distribution, Inc. ("Distribution") in 2015.  The trustee also seeks to recover the roughly $500,000 Distribution transferred to King Solarman under California's fraudulent transfer statute.  The trustee also sues Solarman Fund I to recover roughly $2,200,000 in payments from Distribution under state law and the Bankruptcy Code.

### A.  Case History

The debtors are related entities owned and controlled by Jeff and Paulette Carpoff. As alleged, Solutions manufactured and sold mobile solar generators ("MSGs").  It customarily received a down payment and took a promissory note for payment of the balance of the purchase price. Distribution would then lease the MSGs from the buyers with the stated purpose of subleasing the MSGs to end users to fund the purchase payments the buyer would owe to

---

[1] Complaint, Exhibits 1-3.

2

Solutions. Another debtor, DC Solar Freedom, Inc. ("Freedom"), would market and advertise the MSGs. The trustee generically refers to the debtors, which have been substantively consolidated, as DC Solar.

Overarching everything, the trustee alleges that the Carpoffs looted the debtors and caused them to become insolvent as part of a Ponzi scheme.[2]  Pertinent to the alleged Ponzi scheme, the trustee alleges that:

> The Carpoffs caused DC Solar to transfer monies obtained from new buyers of MSGs to cover obligations owed to earlier buyers. This was contrary to the Carpoffs' representations to the financial investors that sub-lessee revenue would pay those obligations. Moreover, the Carpoffs misrepresented to the financial investors the number of MSGs that DC Solar manufactured, ultimately claiming in 2018 that the figure exceeded 15,000 when it was actually far less. Moreover, although the Carpoffs represented to the financial investors that DC Solar had a series of sub-lessees willing to pay to utilize the MSGs, some sub-leases were real but others were not.[3]

The trustee acknowledges that the debtors conducted some legitimate business; some MSGs were manufactured, sold and leased. The trustee further alleges that while some insiders knew of, and participated in, the Ponzi scheme,[4] others did not.[5]

## B. The Adversary Proceeding

The trustee alleges that King Solarman was in the business of selling solar panels and was a vendor. Based upon the stated structure of companies and alleged payments at issue, it appears that King Solarman sold solar panels to Solutions.[6] The Complaint identifies a number of transfers made by DC Solar between 2015-2018.[7]  The trustee also alleges that Distribution

---

[2] Complaint, ¶¶ 18-19.

[3] Complaint at ¶ 17.

[4] Complaint at ¶ 20.

[5] Complaint at ¶ 21.

[6] Complaint at ¶ 25.

[7] *Id*. at Exhibit 1.

entered into six-year Solar Equipment Leases with Solarman Fund I and Solarman Fund II under which Distribution would lease solar equipment from them.[8]  The Complaint also identifies transfers made to Solarman Fund I, though no payments are identified as having been made to Solarman Fund II.

The trustee does not allege that Defendants knew of the alleged Ponzi scheme.  She does, however, allege that all the transfers were made with the actual intent to hinder, delay and defraud.  The Complaint also seeks to impose liability on co-defendant Michael Cung ("Cung") under 11 U.S.C. § 550 as a subsequent transferee for whose benefit the transfers were made. Additionally, the Complaint contains a state law claim for unjust enrichment and an accounting.

Defendants move to dismiss the complaint under Rule 12(b), and argue that the trustee has failed to plead her fraud claims with sufficient particularity under Rule 9(b). They argue that the bare identification of the challenged transfers is insufficient to bring them within the two-year period under § 548(a)(1). Defendants also contend that the trustee has failed to allege any facts evidencing fraudulent intent as to their transactions, which are characterized as a vendor-vendee relationship.  They also argue that the Complaint is deficient because it is silent as to Defendants' knowledge of the fraud.

The trustee responds that her allegation of a Ponzi scheme suffices to allege actual intent to hinder, delay and defraud sufficient to support her fraudulent transfer claims.  Defendants acknowledge that a properly plead Ponzi scheme establishes the transferor's fraudulent intent to support claims of fraudulent transfer.  However, they argue, to properly state a claim for fraudulent transfer, the trustee is required to explain how the payment of a vendor was in furtherance of a Ponzi scheme.

//

---

[8] Complaint, ¶¶ 33 and 37.

## Analysis

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[9]  Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[10]  A claim is facially plausible only if it contains enough factual allegations that, if taken as true, would allow the court to reasonably infer that the defendant is liable to the plaintiff.[11] Determining whether a claim for relief is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[12]  Importantly, plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully."[13] Therefore, if a complaint contains factual allegations "that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."[14]

While the court must accept all well-pled factual allegations as true when considering a motion to dismiss, this tenet "is inapplicable to legal conclusions."[15]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[16] Additionally, though courts considering a motion to dismiss are generally limited to the

---

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[10] *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 677-78).

[11] *Id.*

[12] *Iqbal*, 556 U.S. at 679.

[13] *Id*. at 678.

[14] *Id*. (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

[15] *Id.* at 678.

[16] *Id.*

allegations contained within a complaint, a court may properly take into account matters subject to judicial notice.[17]  Similarly, courts may also consider papers referenced in the plaintiff's complaint whose authenticity is not disputed when deciding a motion to dismiss.[18]

The Supreme Court has further explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[19]  A complaint that provides only "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'" does not satisfy Rule 8.[20]  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[21]  Accordingly, "[f]actual allegations that only permit the court to infer 'the mere possibility of misconduct' do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by Rule 8(a)(2)."[22]

### A.  Fraudulent Transfers

Defendants' motion to dismiss contends that the trustee's Complaint fails to properly plead "the who, what, when, where, and how of the misconduct charged."[23]  But the Complaint adequately alleges the specific details of the challenged transfers from Solutions and Distribution to King Solarman and Solarman Fund I between October 2015 and November 2018.  Defendants argue that the trustee has failed to allege that the debtors transferred these payments with the requisite fraudulent intent.  But the trustee alleges that the debtors were operating a Ponzi

---

[17] *Estate of Blue v. Cty. of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997).

[18] *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

[19] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

[20] *Id.*

[21] *Id.* (quoting *Twombly*, 550 U.S. at 557).

[22] *Amina v. WMC Finance Co. (In re Amina)*, 2018 WL 3312955, at *5 (D. Hawai'i July 5, 2018) (quoting *Iqbal*, 556 U.S. at 679).

[23] *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 1997).

scheme. King Solarman does not challenge the adequacy of the allegation of a Ponzi scheme or that such an allegation gives rise to "a finding of fraudulent intent under section 548(a)(1) on the basis of circumstantial evidence."[24] Thus, a sufficient Ponzi allegation will establish the debtor's fraudulent intent to support a trustee's efforts to recover transfers made in furtherance of a Ponzi scheme, because the Ponzi scheme is inherently fraudulent.

Both *Agricultural Research* and *Slatkin* involved avoidance actions against investors in the Ponzi scheme. By definition, investors in a Ponzi scheme are paid not through the earnings of any business, but by investments received by new investors, and such payments are the *sine qua non* of the Ponzi scheme. King Solarman, however, was not an investor. Rather, it is alleged to have been a vendor in the business of selling and leasing solar panels to Solutions. This is where the dispute arises.

The parties do not generally differentiate between the challenged payments from Solutions or Distribution to King Solarman or Solarman Fund I. Unlike King Solarman, the trustee alleges that Solarman Fund I leased MSGs to Distribution.

The trustee asks the court to construe the Ponzi scheme presumption of fraudulent intent to encompass *any* transfer from a Ponzi operator. Defendants disagree. They argue that the trustee must specifically allege how the challenged transfers were made in furtherance of the Ponzi scheme. Undoubtedly, payments to investors are made in furtherance of the Ponzi scheme.[25] But King Solarman argues that payments to a vendor from an entity purchasing solar panels for their MSGs did not further the alleged Ponzi scheme.

//

---

[24] *Hayes v. Palm Seedlings Partners-A (In re Agric. Research and Tech. Group, Inc.),* 916 F.2d 528, 534 (9th Cir. 1990) (quoting *Consove v. Cohen (In re Roco Corp.)*, 701 F.2d 978, 984 (1st Cir.1983)); *see also Johnson v. Neilson (In re Slatkin),* 525 F.3d 805, 814 (9th Cir. 2008).

[25] *See In re Vaughan Co., Realtors*, 477 B.R. 206, 220 (Bankr. D.N.M. 2012) ("The allegations in the complaint also sufficiently connect the Defendants to the alleged Ponzi scheme. The Complaint identifies each of the alleged investments the Defendants made, and the alleged rate of return for each investment.").

The situation with Solarman Fund I is even less clear. The Complaint identifies payments made by Distribution to Solarman Fund I but fails to state why the payments were made. The Complaint alleges that Solarman Fund I entered into a Solar Equipment Lease with Distribution, but fails to tie those transfers to the lease. The Complaint does allege that Distribution paid roughly $500,000 to King Solarman on Solarman Fund I's lease.

There is a sharp divide among courts as to what is in furtherance of a Ponzi scheme beyond the investors that necessarily fuel it.[26] Still, even those courts that take an expansive view of what furthers a Ponzi scheme require some specific factual allegations to connect a challenged payment to the Ponzi scheme presumption and how it furthered the Ponzi scheme.[27]

Here, the trustee simply has alleged that the challenged transfers were made "in furtherance of or related to the Carpoff Ponzi Scheme."[28] This is not helpful as it is the epitome of the bald, conclusory statement rejected by the Supreme Court in *Twombly* and *Iqbal*. The trustee alleges payments over several years to Defendants. She does not allege the reason or purpose for any of the specific payments. Rather, she only generally alleges that King Solarman was a vendor and that Solarman Fund I entered into a Solar Equipment Lease. She also acknowledges that some of the debtors' business was legitimate.

The trustee can point to, and combine, various allegations that certainly leave open the *possibility* that the transfers were in furtherance of the alleged Ponzi scheme. But the allegations

---

[26] *Compare Stoebner v. Opp. Fin., LLC*, 562 B.R. 368 (D. Minn. 2016), *aff'd* 909 F.3d 219 (8th Cir. 2018) (claims dismissed as debtor had legitimate source of income to pay transferees); *DeGiacomo v. Sacred Heart University, Inc. (In re Palladino)*, 556 B.R. 10, 14 (Bankr. D. Mass. 2016), *rev'd on other grounds*, 942 F.3d 55 (1st Cir. 2019) (payment of daughter's tuition not in furtherance of Ponzi scheme); with *Bash v. Textron Fin. Corp.*, 524 B.R. 745 (N.D. Ohio 2015) ("[U]nless the transfers are wholly apart from the Ponzi scheme, the transfer will in all likelihood contribute to the scheme in some fashion…"); *Liebersohn v. Campus Crusade for Christ, Inc. (In re CF Foods, L.P.)*, 280 B.R. 103 (Bankr. E.D. Pa. 2002) (debtor's charity payments were in furtherance of Ponzi scheme to foster appearance of success).

[27] *McFarland v. Gen. Elec. Capital Corp. (In re Int'll Mfg. Grp., Inc.)*, 538 B.R. 22, 31 (Bankr. E.D. Cal. 2015) ("[T]he trustee has alleged sufficient connections between the Ponzi scheme and the payments to GECC to state a claim to relief based on the Ponzi scheme presumption.").

[28] Complaint at ¶ 32.

8

do not establish that it is *plausible* the challenged transfers were made in furtherance of the Ponzi scheme. Rather, some additional allegation is needed to tie the challenged payments to the operation of the Ponzi scheme. On the current allegations in the Complaint it is equally possible that the transfers were made as part of a legitimate business that constructed and leased the MSGs, and not the Ponzi scheme.[29]

For these reasons, the court will grant the motion to dismiss the fraudulent transfer claims (counts one through four of the Complaint) with leave to amend to identify how the transfers furthered the alleged Ponzi scheme. As the trustee's fifth cause of action necessarily is dependent upon the claims for fraudulent transfer, it will similarly be dismissed with leave to amend.[30]

## B. Unjust Enrichment

The trustee's sixth cause of action states a claim for unjust enrichment. The parties agree that the law of California governs this claim. The cause of action tersely incorporates the prior allegations and summarily concludes that the transfers benefitted defendants King Solarman, Solarman Fund I and Cung.[31] The Complaint further asserts that the benefit came at the expense of Solutions and it would be unjust to allow King Solarman, Solarman Fund I and Cung to retain the benefit.[32]

A claim for unjust enrichment and restitution under California law requires proof that: (1) the transferee unjustly received and retained a benefit; (2) at the expense of another; and (3)

---

[29] *See Seror v. Stone (In re Automated Fin. Corp.)*, 2011 WL 10502417, at *4 (Bankr. C.D. Cal. Jan. 25, 2011) ("[T]he Trustee has not pled any facts that tie together the intent with the specific transfers being attacked.").

[30] Defendants raise an issue with the timeliness of the trustee's fraudulent transfer claims. Those arguments are not persuasive. The trustee's claims under § 548 are limited to two years, whereas her fraudulent transfer claims under § 544 and California law are limited to four years. While the trustee does not specifically break out which claims fall under which statute, all transfers are obviously subject to the four year look back under § 544 and California law, and those that are within the two years from the filings of either Solutions or Distribution, as applicable, also are timely under § 548.

[31] Complaint, ¶ 62.

[32] *Id*. at ¶¶ 63-64.

knew or had reason to know of the facts constituting unjust enrichment.[33] Defendants maintain that the Complaint fails to establish anything unjust about the identified challenges, or that it knew of any facts making the transfers unjust.

The parties focus on Defendants' knowledge of unjust enrichment. The trustee cites to its allegations that Cung was close to Jeff Carpoff and participated in the looting of the debtors for the Carpoffs' benefit. Certainly, the Complaint includes these allegations, but they are made as a general statement. Defendants are correct that the Complaint fails to sufficiently plead a claim for unjust enrichment because it lacks specificity to show that Cung knew or had reason to know of the unjust enrichment. Once again, the generic, conclusory statements concerning Cung and his participation in alleged looting by the Carpoffs *may* be read in conjunction with the identified transfers to state a claim for unjust enrichment if one connects the dots. However, there is nothing within the Complaint that connects those dots in a manner that renders the claim plausible.

Again, the lack of detail as to the purpose of the transfers is fatal to the trustee's unjust enrichment claims. The allegations that King Solarman was a vendor and that Solutions had legitimate business make it plausible that the challenged payments to it were purchases of solar panels needed by Solutions to manufacture the MSGs. The court does not see how such a purchase would be unjust enrichment.

Similarly, there is nothing specifically alleged as to the challenged lease payments made by Distribution to Solarman Fund I. Once again, if there was an actual lease of one or more MSGs, the court does not see how that could be unjust enrichment. There is simply nothing in the Complaint as to the facts and circumstances of the challenged payments to Solarman Fund I that make the trustee's unjust enrichment claim plausible.

Moreover, the Complaint never addresses any of the individual transfers. Rather, they are treated as a single collection, and the trustee simply asks that the court accept that over three

---

[33] California Civ. Jury Instructions § 375; *see also Welborne v. Ryman-Carroll Foundation,* 22 Cal. App. 5th 719, 725-26 (2018).

years each payment was part of the Carpoffs' looting without identifying when the looting, or the Ponzi scheme, began.

For the reasons stated above, the court concludes that the trustee has failed to satisfy all three elements of an unjust enrichment claim. The trustee, therefore, has failed to sufficiently plead her claim for unjust enrichment under California law.

## C.  Accounting Against Solarman Fund II

Finally, the trustee asserts a claim against defendant Solarman Fund II for an accounting related to a six year equipment lease with Distribution.[34]  As alleged, Distribution would lease "solar equipment from Solarman Fund II."[35]  The trustee contends that she is unable to understand the complex transactions involved in the lease with Distribution and seeks "an accounting from Solarman Fund II of any Debtor's moneys received directly or indirectly by Solarman Fund II."[36]  The Complaint does not identify any direct transfers to Solarman Fund II and it is not named in any other cause of action.

Solarman Fund II argues that there is no such thing as a claim for an accounting.  Rather, an accounting is a remedy for an independent action.[37]  Because the trustee has not asserted any independent claims against it, Solarman Fund II argues that the remedy is not available as a matter of law.[38]

Those California courts that have concluded that an accounting can exist as an independent cause of action still have recognized that "it is 'dependent upon a substantive basis

---

[34] Complaint, ¶ 37.

[35] *Id*.

[36] *Id.* at ¶75.

[37] *See Sobarea Ranches, LLC v. Sobek (In re Sobarea Ranches, LLC)*, 2014 WL 988485, at *3 (Bankr. N.D. Cal. Mar. 12, 2014).

[38] *See Upham v. Fox*, 2014 WL 1379607, at *3 (N.D. Cal. Apr. 8, 2014).

for liability.'"[39]   Additionally, "'[a] cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is *due the plaintiff* that can only be ascertained by an accounting."[40]   Although a fiduciary relationship is not required, "a plaintiff must allege the defendant owes the plaintiff an otherwise unascertainable amount."[41]

In the Complaint, the trustee admits that she is "unable to ascertain through review of the Debtors [sic] books and records whether the Carpoffs caused any of the Debtors [to make] any payments, directly or indirectly, pursuant to the Solarman Fund II Lease."[42]   In other words, instead of asserting that the trustee is owed money by Solarman Fund II as required in a California action for accounting, the trustee admits she does not know whether Solarman Fund II owes the trustee or the debtors' estates anything.

Whether treated as a remedy or a cause of action dependent upon some basis for liability, the Complaint fails to state a valid claim for an accounting from Solarman Fund II.  For this reason, the cause of action for an accounting must be dismissed.

### Conclusion

The trustee's Complaint is too vague and generalized to support the causes of action asserted against Defendants.  For the reasons stated, the court will enter an order granting Defendants' motion to dismiss, but will grant the trustee leave to amend her Complaint to address the issues raised in this decision.

\* \* \* \* \*

---

[39] *Id.* (quoting *Glue–Fold, Inc. v. Slautterback Corp.*, 82 Cal.App. 4th 1018, 1023 n.3 (2000)); *see also Saridakis v. JPMorgan Chase Bank*, 2015 WL 570116, at \*3 (C.D. Cal. Feb. 11, 2015).

[40] *Phillips v. JP Morgan Chase Bank, N.A.*, 2011 WL 13101726, at \*6 (S.D. Cal. Nov. 14, 2011) (quoting *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009) (emphasis added) (citation omitted)).

[41] *Id.*

[42] Complaint, ¶ 72.

Copy sent to all parties and/or their counsel via CM/ECF Electronic Notice.

# # #