Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
**HARTMAN & HARTMAN**
510 W. Plumb Lane, Suite B
Reno, NV 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com

Michael S. Budwick, Esq. #938777 – Admitted *Pro Hac Vice*
Solomon B. Genet, Esq. #617911 – Admitted *Pro Hac Vice*
Kevin Paule, Esq. #125276 – Admitted *Pro Hac Vice*
**MELAND BUDWICK, P.A.**
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
T: (305) 358-6363
F: (305) 358-1221
mbudwick@melandbudwick.com
sgenet@melandbudwick.com
kpaule@melandbudwick.com

Attorneys for Christina W. Lovato, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>DOUBLE JUMP, INC.<br><br>Debtor.<br><br>Affects:<br>☒ DC Solar Solutions, Inc.<br>☒ DC Solar Distribution, Inc.<br>☒ DC Solar Freedom, Inc.<br>☒ Double Jump, Inc. | Lead Case No.: BK-19-50102-gs<br>(Chapter 7)<br><br>Substantively Consolidated with:<br><br>\| 19-50130-gs \| DC Solar Solutions, Inc. \|<br>\| 19-50131-gs \| DC Solar Distribution, Inc. \|<br>\| 19-50135-gs \| DC Solar Freedom, Inc. \| |
| CHRISTINA W. LOVATO,<br><br>    Plaintiff,<br><br>v.<br><br>KING SOLARMAN, INC., CHIANG LIAN CUNG a/k/a MICHAEL CUNG, KING SOLARMAN (INDION) FUND I, LLC, and KING SOLARMAN (INDION) FUND II, LLC,<br><br>    Defendants. | Adversary No.: 21-05028-gs<br><br>**TRUSTEE'S OMNIBUS RESPONSE IN OPPOSITION TO MOTIONS TO DISMISS ADVERSARY COMPLAINT FILED BY KING SOLARMAN, INC. [ECF No. 65] AND MICHAEL CUNG [ECF No. 68]**<br><br>**Hearing Date:  September 17, 2021**<br>**Hearing Time: 9:30 a.m.** |

1

Christina W. Lovato, as chapter 7 trustee ("*Trustee*") for the bankruptcy estates of DC Solar Solutions, Inc. ("*DCSS*"), DC Solar Distribution, Inc. ("*DCSD*"), DC Solar Freedom, Inc. ("*DCSF*", and with DCSD and DCSS, "*DC Solar*") and Double Jump, Inc. ("*DJ*," and with DC Solar, the "*Debtors*"), files her Omnibus Response in opposition to the Motions to Dismiss ("*Motions*") filed by defendants King Solarman, Inc. ("*King Solarman*") and Michael Cung ("*Cung*") [ECF Nos. 65 & 68] (together, the "*Defendants*") and in support of her First Amended Complaint ("*FAC*") [EF No. 53]. Because the Defendants' Motions are substantively similar, the Trustee files this Omnibus Response. In support, the Trustee states as follows.

## PRELIMINARY STATEMENT

The Defendants ignore the Trustee's plain allegations in her FAC. The Trustee has complied with this Court's MTD Order[1] and sufficiently pled her claims.

Jeff Carpoff ("*Carpoff*") perpetrated the Carpoff Ponzi Scheme to, among other things, loot DC Solar for his own personal benefit. One method by which Carpoff did so was to cause DC Solar to transfer ~$40 million in 11 transfers to King Solarman pursuant to an agreement whereby King Solarman (directed by Cung) would kickback millions of dollars to or for Carpoff's benefit and otherwise help perpetrate the Ponzi scheme. The Trustee has directly connected seven of those 11 transfers totaling ~$27 million with the kickbacks themselves (the amounts, the recipients, and connection to Carpoff and the Carpoff Ponzi Scheme). The Trustee has explained how King Solarman (Cung) papered the crooked arrangement through a bogus and forged consulting agreement. The entire Carpoff-Cung relationship was infected with fraud and wrongdoing.

Together, Carpoff/DC Solar and Cung/King Solarman utilized the guise of a limited vendor relationship and a fake consulting arrangement to provide the pretext to loot and launder tens of millions of dollars that constituted the proceeds of Carpoff's criminal activity.

Given the requirement that all inferences must be taken solely in the Trustee's favor, the Trustee has sufficiently pled that Carpoff caused DC Solar to make the ~$40 million in transfers to King Solarman with the actual intent to hinder, delay, or defraud its creditors. Based on these

---

[1] "*MTD Order*" shall mean this Court's Memorandum Opinions, ECF No. 45.

2

and other facts in the FAC, at the pleading stage of the litigation, the Trustee has demonstrated her entitlement to: (1) avoidance and recovery of the Transfers; (2) restitution in connection with King Solarman's unjust enrichment; and (3) an accounting given the covert nature of the transactions.

## THE TRUSTEE'S ALLEGATIONS IN THE FAC

The Trustee alleges the following facts in the FAC, all of which are required to be taken as true and with all reasonable inferences drawn solely in the Trustee's favor.[2]

A. DC Solar and the Carpoff Ponzi Scheme

DC Solar was engaged in a business related to manufacturing, marketing, selling, and leasing mobile solar generators ("***MSGs***").[3] Generally, the business purported to work as follows: Debtor-DCSS would manufacture and sell MSGs for $150,000 each. The buyers were typically tax equity funds owned by a financial investor seeking investment federal tax credits. The buyers paid DCSS a down payment and executed a promissory note for the remaining balance of the purchase price. The buyers would lease the MSGs to DCSS's affiliate, DCSD, which in turn purported to sub-lease the MSG to a third-party end-user/sub-lessee. The end-user's/sub-lessee's lease payments were intended (purportedly) to cover the interest payments on the promissory note.[4] Over the years, DCSS closed over two dozen transactions, purportedly selling over 15,000 MSGs and generating hundreds of millions of dollars of revenue.[5]

However, certain of DC Solar's former insiders, including Carpoff, were also perpetrating a Ponzi scheme through DC Solar and other entities.[6]

> The Carpoffs caused DC Solar to transfer monies obtained from new buyers of MSGs to cover obligations owed to earlier buyers. This was contrary to the Carpoffs' representations to the financial investors that sub-lessee revenue would pay those obligations. Moreover, the Carpoffs misrepresented to the financial investors the number of MSGs that DC Solar manufactured, ultimately claiming in 2018 that the figure exceeded 15,000 when it was actually far less. Moreover, although the Carpoffs represented to the financial investors that DC Solar had a series of sub-lessees willing to pay to utilize the MSGs, some sub-leases were real but others were not.

---

[2] *See* Legal Standard, below.
[3] FAC, ¶ 8.
[4] FAC, ¶ 9.
[5] FAC, ¶ 13.
[6] FAC, ¶ 14.

3

> The Carpoffs looted DC Solar to, among other things, fund their own lavish lifestyle, including through casino gambling, buying a semi-pro baseball team, the use of private jets and the purchase of real and personal property (such as automobiles). And the Carpoffs looted DC Solar to, among other things, pay-off co-conspirators and make payments such as marketing payments (legitimate or illegitimate) to third-parties. This all was intended, in material part, to further the Carpoff Ponzi Scheme and create the perception that DC Solar was profitable.[7]

B. DC Solar Made the Transfers to King Solarman with the Intent to Hinder, Delay, or Defraud Creditors

Carpoff caused DC Solar to further the Carpoff Ponzi Scheme through his crooked relationship with Cung and King Solarman, and their joint looting and money-laundering scheme.[8] Indeed, the entire relationship between Carpoff and Cung/King Solarman was infected with fraud, mischief, and wrongdoing.[9] And each of the Transfers, made by DC Solar at Carpoff's direction, was made with the actual intent to hinder, delay, or defraud creditors, and in furtherance of the Ponzi scheme.[10] The Transfers are identified by date, amount, transferor, and transferee.[11]

While DC Solar did purchase certain items from King Solarman, Carpoff and Cung (who were good friends[12]) agreed to and implemented a looting and money laundering scheme which dominated any ancillary vendor relationship ("***Carpoff-Cung Looting Scheme***").[13] The Carpoff/DC Solar-Cung/King Solarman relationship was conditioned and dependent upon Cung's participation in the Carpoff-Cung Looting Scheme.[14] Cung participated in Carpoff's looting for his own financial gain, *i.e.*, he was financially rewarded for it.[15]

The Carpoff-Cung Looting Scheme included at least the following elements:

- The Carpoff-Cung Looting Scheme began no later than January 2014.[16]

---

[7] FAC, ¶¶ 15-16.
[8] FAC, ¶¶ 27-43.
[9] FAC, ¶ 26.
[10] FAC, ¶¶ 42-43.
[11] FAC, Exhibit 1.
[12] FAC, ¶ 23.
[13] FAC, ¶ 27.
[14] FAC, ¶ 27.
[15] FAC, ¶¶ 27, 31.
[16] FAC, ¶ 29.

- Carpoff would identify for Cung certain items (supplies) to acquire for DC Solar. Carpoff and Cung would establish a base-price ("***Price***") for those items. Carpoff and Cung would also agree to an amount <u>above</u> that Price. The overpayment amount is referred to as the "Money to Be Laundered."[17]

- Carpoff would cause DC Solar to transfer to King Solarman the Price plus the Money to be Laundered. Then, Cung would cause King Solarman to kickback a portion of the Money to be Laundered to or for Carpoff, while retaining a portion as its money-laundering fee.[18]

That portion of the Money to be Laundered kicked-back to Carpoff or for his benefit (*i.e.*, transferred by King Solarman at Cung's direction), further ties the Transfers to the Carpoff Ponzi Scheme. Some examples follow.

<u>First</u>, King Solarman transferred hundreds of thousands of dollars to a Las Vegas casino for Carpoff's benefit.[19] Promoting Carpoff's lavish lifestyle, and Carpoff's looting of DC Solar, was a primary purpose of the scheme.[20] <u>Second</u>, King Solarman transferred ~$19 million to J&C, a Carpoff personal slush fund.[21] Carpoff's looting of DC Solar for his own personal benefit was a primary purpose of the Carpoff Ponzi scheme.[22] <u>Third</u>, King Solarman transferred millions of dollars to EE, an entity controlled by Carpoff and used by him for his personal benefit and in furtherance of the scheme.[23] Again, Carpoff's looting of DC Solar for his own personal benefit was a primary purpose of and motivation for Carpoff to perpetrate the Carpoff Ponzi scheme.[24] <u>Fourth</u>, King Solarman transferred hundreds of thousands of dollars to pay a bribe to Alan Hansen for Mr. Hansen's criminal services as a conspirator in furtherance of the Carpoff Ponzi Scheme.[25] These payments were "a payoff for Hansen's participation in the Carpoff Ponzi Scheme."[26]

Upon information and belief, neither Cung nor King Solarman had any legitimate business

---

[17] FAC, ¶ 30.
[18] FAC, ¶ 31.
[19] FAC, ¶ 35.
[20] FAC, ¶ 32.
[21] FAC, ¶ 32.
[22] FAC, ¶ 28.
[23] FAC, ¶ 34.
[24] FAC, ¶ 28.
[25] FAC, ¶ 36.
[26] FAC, ¶ 36.

dealings with Hansen, EE, and J&C.[27] Thus, there was no legitimate reason for King Solarman to send these parties millions of dollars.

Moreover, the Trustee has alleged:

> To cover-up their illicit arrangement, and further demonstrating that the entire relationship was infected with wrongdoing, Cung (on behalf of King Solarman) and Jeff Carpoff (through J&C) executed a bogus "consulting" agreement ("**Bogus Consulting Agreement**") to further their wrongdoing. However, no consulting services were provided. Further, Cung (on behalf of King Solarman) and Jeff Carpoff (through J&C) backdated the Bogus Consulting Agreement, falsifying a January 15, 2014 start-date as the Bogus Consulting Agreement was not executed until (at the earliest) CY 2016. This is a form of forgery.[28]
>
> ***
>
> There were other aspects to the Cung-Carpoff Looting Scheme. For example, upon information and belief: (1) Cung used other of his affiliates to transfer monies to or for Jeff Carpoff's benefit, such as YT International; and (2) Cung, using King Solarman, provided Jeff Carpoff with invoices not reflecting the true terms of a purchase-and-sale transaction; rather, the invoices represented the Price plus the Money to be Laundered.[29]

C. The Trustee Has Traced Much of the Looted Monies, From DC Solar to King Solarman and then Back to Jeff Carpoff.

The Trustee has traced monies from DC Solar back to or for the benefit of Carpoff, or otherwise to perpetrate the scheme, through King Solarman. Out of the 11 total Transfers sought to be avoided, totaling $40,582,988.70, the Trustee has explicitly tied seven transfers, totaling $27,331,520, with specific examples of money laundering, including the (a) recipient; (b) date; and (c) amount.[30] The Trustee has done so this without yet having the benefit of deposing Mr. Cung, King Solarman, or King Solarman's internal and external accounting personnel.

## LEGAL STANDARD

A motion to dismiss in an adversary proceeding is governed by F.R.B.P. 7012(b). The trial court must accept as true all facts alleged in the complaint and must draw all reasonable inferences

---

[27] FAC, ¶ 37. The Trustee has appropriately pleaded this fact, which is to be considered as true with all reasonable inferences in the Trustee's favor at this stage. *See* Argument, Section I.
[28] FAC, ¶ 33 (emphasis added).
[29] FAC, ¶ 39 (emphasis added).
[30] FAC, ¶ 38.

in favor of the plaintiff.[31] Dismissal is proper only where it is beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.[32]

> Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged enough facts to state a claim to relief that is plausible on its face. Only where a plaintiff fails to nudge his or her claims across the line from conceivable to plausible, is the complaint properly dismissed. While the plausibility requirement is not akin to a probability requirement, it demands more than a sheer possibility that a defendant has acted unlawfully. This plausibility inquiry is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.[33]

The Trustee's claim for "actual fraud" must comply with Rule 9(b), and "state with particularity the circumstances constituting fraud," although "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." However, a "more liberal standard for pleading fraud with particularity is applied in bankruptcy cases. This less stringent standard is predicated upon the fact it is often the trustee, a third party, who is pleading fraud based on second-hand information."[34] Moreover, "less particularity is required where plaintiff is not asserting that the fraud was against himself personally, but rather it was committed against a third party."[35]

## ARGUMENT

### I. The Trustee's Allegation Made "Upon Information and Belief" Was Appropriately Pled and Should be Taken as True

The Defendants ask the Court to ignore the Trustee's allegations, made upon information and belief, that King Solarman had no legitimate business relationship with Hansen (the Carpoff Ponzi Scheme co-conspirator), J&C (Carpoff's slush fund), and EE (Carpoff's tool for the Ponzi scheme). The Defendants ask this Court to change the Trustee's allegations to provide that the Carpoff-Cung looting and money laundering scheme was – somehow – innocent and actually an innocent form of ordinary commercial dealing, akin to "*a normal action in complex commercial*

---

[31] *Odom v. Microsoft Corp.,* 486 F.3d 541, 545 (9th Cir. 2007).
[32] *Id.*
[33] *Perrie v. Perrie*, 2016 WL 1090577, *2 (E.D. Cal. Mar. 21, 2016), aff'd, 727 F. App'x 673 (Fed. Cir. 2018) (notations, quotations, and citations omitted).
[34] *Smith v. Arthur Andersen LLP,* 175 F. Supp. 2d 1180, 1201 (D. Ariz. 2001) (citations omitted).
[35] *Id.* at 1202.

7

*transactions, especially in most favored nations contracts.*"[36] This is a frivolous effort to change the allegations and alter the pleading standard.

The Defendants cite to *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989), to argue that the Trustee's allegations "upon information and belief" are insufficient, which is not only inapposite but misleadingly quoted. First, *Moore* addressed a claim for securities fraud, where the plaintiff failed to "allege the time, place or nature of the defendants' allegedly fraudulent conduct."[37] Rather, the plaintiff "base[d] its allegations on information and belief and fail[ed] to attribute particular fraudulent statements or acts to the individual defendants."[38] These facts are inapposite to the instant case.

Second, the Defendants misleadingly and selectively quote from *Moore*. The Ninth Circuit's full directive in *Moore* is as follows:

> In *Wool*, we explained that allegations of fraud based on information and belief usually do not satisfy the particularity requirements under rule 9(b). However, the rule may be relaxed as to matters within the opposing party's knowledge.[39]

The Defendants omit the second sentence, which qualifies the first. The relationship between King Solarman (on the one hand) and Hansen, J&C, or EE (on the other hand) is particularly "within the opposing party's knowledge," and certainly not within the Trustee's knowledge as an after-the-fact fiduciary. The Trustee alleges specific facts supporting her allegation, such as Hansen's status as a co-conspirator and King Solarman's bogus consulting agreement with J&C. Indeed, Cung/King Solarman's concealing their wrongdoing through the bogus agreement demonstrates their consciousness of guilt.[40] But because the Trustee has yet to depose King Solarman or Mr. Cung, she deemed the "upon information and belief" preface appropriate.

The Trustee submits that *In re Yashouafar*, 2017 WL 4326367 (Bankr. C.D. Cal. Aug. 28, 2017) is instructive. There, considering an actual fraudulent transfer claim, the bankruptcy rejected

---

[36] Motions, p. 4.
[37] 885 F.2d at 540.
[38] *Id*.
[39] *Moore*, 885 F.2d at 540 (citation omitted, emphasis added).
[40] *See generally People v. Chism*, 2003 WL 353487, *7 (Cal. Ct. App. Feb. 18, 2003) (efforts to conceal indicates wrongdoing and a consciousness of guilt).

8

the argument that allegations on "information and belief" were insufficient because the trustee pled facts that supported the inference of a fraudulent agreement.[41] Similarly, here the Trustee pled the Carpoff-Cung Looting Agreement in detail, with only a single allegation, itself factually supported, alleged on "information and belief."[42]

The Trustee's allegation at issue should be taken by this Court as true. But even if the Court were to ignore this allegation, the Trustee has adequately and sufficiently pled her claims for relief.

## II. The Trustee Sufficiently Pleads Counts I and II

The Trustee's FAC has adequately pled causes of action against the Defendants for actual fraudulent transfer - Counts I and II.

### A. The Ponzi Presumption and the Carpoff Ponzi Scheme

The Trustee has sufficiently pled the existence of the Carpoff Ponzi Scheme and is entitled to the "Ponzi presumption" under Ninth Circuit law. The Defendants do not challenge the Trustee's pleading of the Ponzi scheme.[43] Because the "mere existence of a Ponzi scheme is sufficient to establish actual intent under § 548(a)(1) or a state's equivalent to that section,"[44] courts presume actual intent in relation to a Ponzi scheme because the debtor knows at the time of the transfer that the scheme ultimately must collapse.[45] This is the "Ponzi Presumption of Actual Intent."

### B. DC Solar made the Transfers in Furtherance of the Ponzi Scheme

The Trustee has sufficiently pled that DC Solar made the Transfers in furtherance of the Carpoff Ponzi Scheme. In the MTD Order, this Court found that "additional allegation is needed to tie the challenged payments to the operation of the Ponzi scheme"[46] This Court explained that "[o]n the current allegations ... it is equally possible that the transfers were made as part of a legitimate business that constructed and leased the MSGs, and not the Ponzi scheme."[47] Through her FAC, the Trustee has provided sufficient allegations to address the Court's concerns.

---

[41] *Id.* at *24.
[42] *See generally In re 1031 Tax Grp., LLC*, 420 B.R. 178, 190 (Bankr. S.D.N.Y. 2009).
[43] *See also* MTD Order, p. 7.
[44] *In re AFI Holding, Inc.*, 525 F.3d 700, 704 (9th Cir.2008) (internal citation omitted)
[45] *In re Nat'l Consumer Mortg., LLC*, 2013 WL 164247, at *11 (D. Nev. Jan. 14, 2013).
[46] MTD Order, p. 9.
[47] MTD Order, p. 8.

For starters, the "in furtherance of" standard, per the weight of the decisional law, is not a very high one, especially when the Trustee has sufficiently pled the fact of the Carpoff Ponzi Scheme.[48] A district court, applying basic principles of human nature in considering an actual fraudulent transfer claim arising from a Ponzi scheme, ruled:

> Surely transfers that enable a Ponzi scheme operator to profit from her own Ponzi scheme, and thereby perpetuate such a scheme, are 'in furtherance of' a Ponzi scheme.[49]

Bankruptcy courts from within the Ninth Circuit agree.[50]

The Trustee has pled facts showing the factual plausibility that the Transfers were in furtherance of the Ponzi scheme. Carpoff perpetrated a Ponzi scheme and worked with Cung, his good friend, to illicitly use their companies to launder and loot monies in exchange for money-payments and kickback payments. Not only that, but the monies transferred to King Solarman were sourced from Ponzi-investors,[51] and the monies King Solarman paid out included those to

---

[48] MTD Order, n. 26 (citing law supporting an expansive and non-expansive reading, including *Bash v. Textron Fin. Corp.*, 524 B.R. 745, 758 (N.D. Ohio 2015) ("The Court finds that the "in furtherance of" element does not pose a difficult hurdle once a Ponzi scheme is established. This is because, by its very nature, Ponzi schemes are destined to collapse. Thus, unless the transfers are wholly apart from the Ponzi scheme, the transfer will in all likelihood contribute to the scheme in some fashion.") ("[U]nless the transfers are wholly apart from the Ponzi scheme, the transfer will in all likelihood contribute to the scheme in some fashion.") & *In re CF Foods, L.P.*, 280 B.R. 103 (Bankr. E.D. Pa. 2002) (debtor's charity payments were in furtherance of Ponzi scheme to foster appearance of success)); *see also In re Agape World, Inc.*, 467 B.R. 556, 570 (Bankr. E.D.N.Y. 2012) ("The sole exception to the Ponzi scheme presumption is where the transfers at issue are so unrelated to the Ponzi scheme that the transfers do not serve to further the Ponzi scheme."); *In re Pearlman*, 440 B.R. 569, 576 (Bankr. M.D. Fla. 2010) (for purposes of denying a motion to dismiss, allegations that repayments of bank loans "kept credit flowing and stabilized Pearlman's fraudulent house of cards perhaps a bit longer" was sufficient to make the allegations plausible that the payments were in furtherance of the Ponzi scheme); *see also, generally, Goldsmith v. Zazzali*, 814 F. App'x 279, 280 (9th Cir. 2020) ("The evidence sufficiently shows that the purchase of the [property] was connected with DBSI's broader Ponzi scheme.").

[49] *Schneider v. Barnard*, 508 B.R. 533, 545 (E.D.N.Y. 2014).

[50] *In re Fox Ortega Enterprises, Inc.*, 2021 WL 1605169, *11 (Bankr. N.D. Cal. Apr. 23, 2021) (describing the characteristics of a Ponzi scheme, the court explained that assets brought into the entity are "diverted improperly to the personal use of the fraudster."); *In re Sand Hill Cap. Partners III, LLC*, 2010 WL 4269622, *1 (Bankr. N.D. Cal. Oct. 25, 2010) (payments by debtor for Ponzi perpetrator-insiders' "personal benefit" were in furtherance of the scheme); *see also In re Int'l Mfg. Grp., Inc.*, 538 B.R. 22, 31 (Bankr. E.D. Cal. 2015).

[51] FAC, ¶¶ 14-16, 27-28.

Carpoff's Ponzi scheme-slush fund (J&C), Carpoff's tool of the scheme (EE), a criminal coconspirator (Hansen), and casinos for Carpoff's pleasure – all in furtherance of the scheme.

The Trustee is entitled to the "Ponzi Presumption of Actual Intent." The Trustee has satisfied her burden at this early stage of the litigation, with her well-pleaded facts taken as true and all inferences drawn in her favor.

### C. The Transfers, Made to Launder the Proceeds of the Carpoff Ponzi Scheme, Were Unquestionably Made to Further the Scheme

And to drive the point home, it is axiomatic and well-supported in decisional law that laundering the proceeds of a criminal scheme is itself in furtherance of that scheme.[52] The Trustee has pled, with factual detail, that Carpoff caused DC Solar to make the Transfers to King Solarman pursuant to a money laundering scheme. The Trustee has also pled, with factual detail, Cung and King Solarman's role in that money laundering scheme. Cung and Carpoff, in concert, sought to make transfers to King Solarman appear to be for the purpose of purchasing materials for DC Solar, using a bogus consulting agreement to provide cover for King Solarman to kickback a substantial portion of that money to or for Carpoff's benefit, to enable Carpoff to enjoy the fruits of his fraud. Indeed, the entire Carpoff-Cung relationship was predicated on this scheme, and Cung/King Solarman was paid for their money laundering services. Thus, the Transfers were in furtherance of the Ponzi scheme.

The Trustee is entitled to the "Ponzi Presumption of Actual Intent." The Trustee has satisfied her burden at this early stage of the litigation, with her well-pleaded facts taken as true and all inferences drawn in her favor.

### D. The Trustee Has Complied with Rule 9, Including its Purpose.

The Trustee has complied with Rule 9 and its particularity requirement. In contrast, the Defendants ignore that the purpose of Rule 9's particularity requirement is: "*to give defendants*

---

[52] *See Eastman Kodak Co. v. Camarata*, 2006 WL 3538944, *9 (W.D.N.Y. Dec. 6, 2006) ("[C]ourts have held that acts of money laundering can be performed in an effort to 'further' a scheme to defraud") (citing cases); *see also U.S. v. Smith*, 526 F. App'x 256, 259 (4th Cir. 2013) ("This evidence provided adequate support for the jury's determination that the various transactions underlying the wire fraud and money laundering charges were in furtherance of or derived from the fraudulent scheme.").

11

*notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.*"[53] Per the FAC, the Defendants plainly understand the misconduct alleged.

In an actual fraudulent transfer case, it is the transferor's (DC Solar) intent that is the lynchpin of the analysis—not the transferee's (Defendants) intent.[54] There is no requirement for the Defendants to have engaged in any misconduct.[55] Those issues will surface, the Trustee expects, when the Defendants assert their defenses to the Trustee's avoidance claims.

### E.  The Defendants' Arguments Should be Rejected.

The Defendants repeatedly argue that the Trustee has merely re-labeled her allegations, and that they are no different than included in her original complaint.[56] For the reasons stated above, and from a plain reading of the pleadings, that is untrue.

The Defendants also argue that the FAC fails to differentiate the transfers for legitimate business transactions and those in furtherance of the Carpoff Ponzi Scheme.[57] This is a red herring. First, "value" is a defense and not a part of the Trustee's case-in-chief under the Code or the California state law analog. And the Trustee expects to challenge the Defendants' good faith and value defenses at the appropriate time. Second, the Trustee alleged in detail that the relationship between Cung/King Solarman and Carpoff/DC Solar was dependent upon Cung/King Solarman's agreement to assist Carpoff's looting of (and money laundering from) DC Solar, and that the entire relationship was infected with wrongdoing. The Trustee need not differentiate among transfers because all of the Transfers were made with the intent to hinder, delay, or defraud creditors. Third, a California bankruptcy court recently rejected a similar argument, ruling that "there is no support for the proposition that paying some value for satisfaction of a claim invariably defeats a fraudulent

---

[53] *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).
[54] *See In re Nat'l Audit Defense Network*, 367 B.R. 207, 221 (Bankr. D. Nev. 2007) (noting that debtor's intent is key, and that "no collusion with the transferee is necessary").
[55] *In re LLS Am., LLC*, 2013 WL 3305393, *12 (Bankr. E.D. Wash. July 1, 2013), R&R adopted as modified 2013 WL 4480667 (E.D. Wash. Aug. 19, 2013).
[56] Motions, *passim*.
[57] Motions, p. 13.

12

transfer claim."[58] <u>Fourth</u>, the Trustee has explicitly tied seven of the 11 Transfers to the illicit kickback transfers, if the Court finds such a requirement (which it should not). With inferences in the Trustee's favor, these facts indicate that the entire relationship was corrupt.

The Defendants cite to *Automated Finance*, in which the court granted a motion to dismiss because the trustee had "not pled any facts that tie together the intent with the specific transfers being attacked."[59] This is in line with this Court's ruling in the MTD Order. But as explained in this Omnibus Response, the Trustee has complied with this Court's directives.

The Defendants' reliance on *Stoebner*[60] is also misplaced. There, the trustee, seeking to avoid transfers, brought claims on behalf of debtor-Polaroid and certain affiliates, which had connections to other entities through which a Ponzi scheme was perpetrated, <u>but no Ponzi scheme operated through the debtor-transferor</u>.[61] The debtor-transferor operated a legitimate, stand-alone entity, to which real retailers made real payments for real goods, apart from any Ponzi scheme. Further, Minnesota state law – which does <u>not</u> apply a Ponzi presumption[62] – governed, and the unique Minnesota law-application permeated that court's entire ruling; *Stoebner* is wholly inapposite to the Ninth Circuit and California law controlling this proceeding.

Here, while DC Solar obtained some goods from King Solarman, Carpoff did run a Ponzi scheme through DC Solar (the transferor) and the entire Carpoff-Cung relationship was infected with wrongdoing and depended on the looting and money laundering scheme. Plus, tens of millions of dollars were funneled from DC Solar to and through King Solarman by Cung to: (a) benefit the Defendants; and (b) assist the Carpoffs with (i) the looting of DC Solar; and (ii) perpetration of the scheme. None of that existed in *Stoebner*. The Defendants' Motions should be denied.

---

[58] *Fox Ortega*, 2021 WL 1605169, *34.
[59] *In re Automated Finance Corp.*, 2011 WL 10502417, *4 (Bankr. C.D. Cal. Jan. 25, 2011).
[60] *Stoebner v. Opportunity Finance, LLC*, 562 B.R. 368, 384 (D. Minn. 2016), aff'd, 909 F.3d 219 (8th Cir. 2018).
[61] *Id.* at 381 ("Chief Judge Kishel determined, based on the pleadings, that the only possible transferors were PettersCB or PettersCB Funding, <u>but Polaroid was not in Tom Petters' [the ponzi schemer's] enterprise structure at the time the transfers were made</u>") (emphasis added); 385-86; 387 ("[C]ommingled funds, let alone the presence of a flourishing Ponzi scheme <u>elsewhere in a related organization,</u> are insufficient to establish actual fraud.") (emphasis added).
[62] *Id.* at 384 ("The *Finn* [Minnesota Supreme C]ourt … dispensed with the application of the Ponzi scheme presumption to establish actual fraud under the MUFTA.").

### F. Even without the Ponzi Presumption, the Trustee has Sufficiently Pled DC Solar's Actual Intent to Hinder, Delay or Defraud

Even if the Ponzi Presumption of Actual Intent does not apply (and it does), the Trustee has sufficiently pled that Carpoff caused DC Solar to make the Transfers with the actual intent to hinder, delay, or defraud creditors.[63] Because direct evidence of fraudulent intent is rarely available, courts infer intent from the totality of the circumstances; this often comes from the well-known "badges of fraud."[64] "There is no minimum number of factors that are required to demonstrate fraudulent intent, and only one or two badges of fraud may suffice to find a transfer was made with actual fraudulent intent. In fact, fraudulent intent may be found even where no badges of fraud are found, when otherwise supported by the evidence."[65] Badges of fraud create an inference of fraud in the aggregate; the lack of a particular badge, among many, does not create an inference to the contrary (*i.e.,* that there was no fraudulent intent).[66]

Courts have held that efforts to loot a debtor as part of a pattern of fraudulent conduct is sufficient to show the requisite actual intent.[67] This common-sense application is on-point here, as the Trustee has alleged DC Solar's looting and money laundering by and through the Transfers. *See* Section II. But moving to specific badges of fraud:[68]

- The Transfers were to King Solarman, controlled by Cung, Jeff Carpoff's "good friend" and partner in the looting scheme. They are "insiders".

- Jeff Carpoff received (directly or indirectly) tens of millions of dollars of the Transfers back, to or for his benefit, through the kick back portion of the looting scheme to EE, J&C, and the Casino, among others.

- The Carpoff Ponzi Scheme was ongoing at all material times, so DC Solar was always under the threat of suit by investors.

---

[63] 11 U.S.C. §548(a)(1)(A) and 11 U.S.C. §544 & CUVTA §3439.
[64] *Fox Ortega*, 2021 WL 1605169, *16.
[65] *Id.* at *14 (citations and quotations omitted).
[66] *Id* at *18.
[67] *In re PSI Indus., Inc.*, 306 B.R. 377, 387 (Bankr. S.D. Fla. 2003); *see also In re Choy*, 569 B.R. 169, 181 (Bankr. N.D. Cal. 2017) (analyzing intent to hinder, delay, or defraud in the context of Section 727 of the Code); *Cf. In re Cork*, 2015 WL 5197454, *21 (Bankr. D. Ariz. Sept. 4, 2015), aff'd, 566 B.R. 237 (D. Ariz. 2017) ("Nevertheless, the Court finds Debtor looted the Searchlight Account (which was estate property) ... Debtor committed this looting with the subjective intent to hinder, delay, and defraud the Trustee and Debtor's creditors.").
[68] *Fox Ortega*, 2021 WL 1605169, *14 *citing* CUVTA §3439.04.

14

- The Transfers, made as part of the Cung-Carpoff Looting Scheme, removed tens of millions of dollars in assets from DC Solar.

- The value of the consideration received by DC Solar was far less than the amount of the Transfers, as tens of millions of dollars were kicked back to or for Jeff Carpoff's benefit, or otherwise in furtherance of the Ponzi scheme.

- DC Solar was insolvent at the time of the Transfers, by virtue of the perpetration of Carpoff Ponzi Scheme including the crushing debt-load owed to its creditors that Carpoff was continuously seeking to defraud.[69]

DC Solar's intent to hinder, delay, or defraud its creditors is sufficiently pled, especially when coupled with the fact of the Carpoff Ponzi Scheme,[70] the Carpoff-Cung Looting Scheme, and at this early stage and with all inferences taken in the Trustee's favor.

### III. The Trustee Sufficiently Pleads Count III

Because Counts I and II are properly alleged, Count III (recovery per Section 550) is properly alleged as well. The Motions present no meaningful argument that Count III should be dismissed independent of the arguments relating to Counts I and II.

### IV. The Trustee Sufficiently Pleads Count IV

Through Count IV, the Trustee asserts a claim for "Quasi Contract for Unjust Enrichment Seeking Restitution."[71] The Defendants argue that this claim should be dismissed because the Trustee supposedly fails to: (i) allege that the Defendants knew or should have known of facts constituting unjust enrichment; and (ii) identify the applicable transfers.[72]

First, the Trustee sufficiently alleges all requisite facts. In the MTD Order, the Court noted that the initial Complaint lacked detail "as to the purpose of the transfers."[73] The Court also ruled

---

[69] *See In re Nat'l Consumer Mortgage, LLC*, 2013 WL 164247, *12 (D. Nev. Jan. 14, 2013) ("[A] Ponzi scheme is insolvent from its inception as a matter of law.").
[70] *In re Nat'l Audit Def. Network*, 367 B.R. 207, 222 (Bankr. D. Nev. 2007) (when considering badges of fraud, fact that insiders of debtor were perpetrating a fraudulent scheme similar to a Ponzi scheme indicated actual fraudulent intent); *Fox Ortega*, 2021 WL 1605169 (similar).
[71] A claim for unjust enrichment and restitution under California law requires proof that: (1) the transferee unjustly received and retained a benefit; (2) at the expense of another; and (3) knew or had reason to know of the facts constituting unjust enrichment. MTD Order at pp. 9-10.
[72] Motions, at pp. 14-16.
[73] MTD Order, at p. 10.

15

that "[t]he allegations that King Solarman was a vendor and that Solutions had legitimate business make it plausible that the challenged payments to it were purchases of solar panels needed by Solutions to manufacture the MSGs."[74]

The Trustee has complied with this Court's directive. As to the former, the Trustee alleged that "*King Solarman and Cung knew or had reason to know of the facts constituting the unjust enrichment, as they had knowledge of and were participants in the Carpoff-Cung Looting Scheme*."[75] Together with the Trustee's detailed allegations of the Carpoff-Cung Looting Scheme, the Trustee has sufficiently pled the "purpose" of the Transfers.

As to the latter, the Defendants suggest that King Solarman's millions of dollars of kickback payments were "normal vendor-vendee transactions."[76] The Motions argue that "*the only viable inference that can be drawn from the Complaint as pled is that whatever transfers were made to Defendants were made in the ordinary course of their business, and that Defendants were innocent in their acceptance of money from DC Solar*."[77] This is an absurd argument that utterly contradicts the allegations in the FAC while also asking the Court to create a new pleading standard that Defendants are entitled to inferences in their favor.

Second, the Trustee sufficiently identifies the amounts applicable to Count IV; the entire relationship between the Defendants and Carpoff was infected with fraud, mischief, and wrongdoing. The Trustee ties, explicitly, seven of the 11 total Transfers totaling ~$29 million and how Cung/King Solarman helped loot those monies from DC Solar and launder them. It would be unjust to permit King Solarman to retain <u>any</u> of that money it helped Carpoff steal from DC Solar. Nonetheless, even if the amount of unjust enrichment may be in dispute, the fact of unjust enrichment is not (certainly, at this stage).[78] As to Count IV, the Motions should be denied.

---

[74] *Id.* at p. 10.
[75] FAC, ¶ 63.
[76] Motions, p. 15.
[77] Motions, at pp. 15-16.
[78] *See generally Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1481-82 (2014), as modified (May 27, 2014)

16

## V. The Trustee Sufficiently Pleads Count V

Through Count V, the Trustee seeks an equitable accounting of the monies looted by Carpoff which Cung and King Solarman helped funnel away from DC Solar, their rightful owner. The Defendants' arguments in opposition should be rejected.

<u>First</u>, a claim for accounting "requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting and that some balance is due the plaintiff that can only be ascertained by an accounting."[79] The Trustee has satisfied her obligation. Carpoff (DC Solar) and Cung (King Solarman) entered a looting and money laundering scheme which Carpoff used to further his Ponzi scheme. Together, in concert, Cung and Carpoff looted tens of millions of dollars from DC Solar. Together, in concert, they sought to cover up the scheme by forging a bogus consulting agreement. The Trustee seeks an accounting to ensure her understanding of the detail of the monies in-and-out, and any consideration (illicit or otherwise).

<u>Second</u>, a claim for accounting sounds in equity, and "may be sought where the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable."[80] The Trustee is an after-the-fact fiduciary tasked with investigating DC Solar's pre-petition activities, including the Carpoff Ponzi Scheme and the Carpoff-Cung Looting Scheme. The Trustee alleges that DC Solar's relationship with Cung and King Solarman was multi-layered and complicated, and that she been unable to ascertain the full extent of value back-and-forth.[81] The Trustee has no adequate legal remedy, demanding a fixed sum is simply impracticable, and thus an accounting is the Trustee's appropriate remedy.

### IN THE ALTERNATIVE, REQUEST FOR LEAVE TO RE-PLEAD

The Trustee has properly pled her claims for relief and the Motions should be denied. However, in the alternative and if the Court finds the FAC lacking in any respect, the Trustee respectfully requests leave to re-plead and file a second amended complaint.[82] The Trustee has acted in good faith, without delay, and expects she can provide additional facts if directed by the

---

[79] *Phillips v. JP Morgan Chase Bank, N.A.*, 2011 WL 13101726, at *6 (S.D. Cal. Nov. 14, 2011).
[80] *Civic Western Corp. v. Zila Indus., Inc.*, 66 Ca.App.3d 1, 14 (1977) (citation omitted).
[81] FAC, ¶ 72.
[82] *Edwards v. Leaders in Comm. Alt., Inc.*, 2021 WL 1235840, *2 (9th Cir. Apr. 2, 2021).

Court. While the Trustee believes she has pled her claims well beyond the required "*short and plain statement*" and Rule 9 (as applicable), she certainly could add more content and length to explain with further particularity, for example, the roles that Alan Hansen, EE, and J&C played in the Carpoff Ponzi Scheme, and what these entities did with and for the monies kicked back to them by King Solarman (as directed by Cung). The Trustee has already pled that these persons and entities were part of the Ponzi scheme,[83] but if the Court finds it necessary, the Trustee is certainly willing to add in these, and other, factual allegations. As stated, the Trustee believes this is not necessary and these are appropriately the subject of discovery. In any event, a second amended complaint would not prejudice the Defendants.

**WHEREFORE**, the Trustee prays for and demands order as follows:

(1) Denying the Defendants' Motions.

(2) Alternatively, granting the Trustee leave to amend her Complaint.

(3) Any other relief, equitable or otherwise, that this Court deems just and proper.

DATED: September 3, 2021.

**HARTMAN & HARTMAN**

*/s/ Jeffrey L. Hartman*
Jeffrey L. Hartman, Esq., Attorney for Plaintiff
Christina W. Lovato

**MELAND BUDWICK, P.A.**

*/s/ Michael S. Budwick*
Michael S. Budwick, Esq., Admitted Pro Hac Vice
Solomon B. Genet, Esq., Admitted Pro Hac Vice
Kevin Paule, Esq., Admitted Pro Hac Vice
Attorneys for Plaintiff Christina W. Lovato

---

[83] FAC, ¶¶32, 34-38.

## CERTIFICATE OF SERVICE

I hereby that on September 3, 2021, I caused to be served for following document (s):

**TRUSTEE'S OMNIBUS RESPONSE IN OPPOSITION TO MOTIONS TO DISMISS ADVERSARY COMPLAINT FILED BY KING SOLARMAN, INC. [Adv. ECF No. 65] AND MICHAEL CUNG [Adv. ECF No. 68]**

I caused to be served the above-named document (s) as indicated below:

✔ a. Via ECF to:

- **MICHAEL S BUDWICK**    mbudwick@melandbudwick.com, ltannenbaum@melandbudwick.com; mrbnefs@yahoo.com; ltannenbaum@ecf.courtdrive.com; ltannenbaum@ecf.courtdrive.com

- **CHRISTOPHER PATRICK BURKE**    attycburke@charter.net

- **JEFFREY L HARTMAN**    notices@bankruptcyreno.com abg@bankruptcyreno.com

- **ALEXANDER J. LEWICKI**    alewicki@diemerwei.com

- **CHRISTINA W. LOVATO**    trusteelovato@att.net NV26@ecfcbis.com

- **KEVIN C. PAULE**    kpaule@melandbudwick.com ltannenbaum@melandbudwick.com mrbnefs@yahoo.com ltannenbaum@ecf.courtdrive.com

✔ b. Via United States Mail to:

**KATHRYN S. DIEMER**
55 S MARKET STREET, SUITE 1420
SAN JOSE, CA 95113

DATED: September 3, 2021.              */s/ Michael S. Budwick*
                                        Michael S. Budwick, Esq.