Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
**HARTMAN & HARTMAN**
510 W. Plumb Lane, Suite B
Reno, NV 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com

Michael S. Budwick, Esq. #938777 – Admitted *Pro Hac Vice*
Solomon B. Genet, Esq. #617911 – Admitted *Pro Hac Vice*
Meaghan E. Murphy, Esq. #102770 – Admitted *Pro Hac Vice*
Gil Ben-Ezra, Esq. #118089 – Admitted *Pro Hac Vice*
Alexander E. Brody, Esq. #1025332 – Admitted *Pro Hac Vice*
**MELAND BUDWICK, P.A.**
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
T: (305) 358-6363
F: (305) 358-1221
mbudwick@melandbudwick.com
sgenet@melandbudwick.com
mmurphy@melandbudwick.com
gbenezra@melandbudwick.com
abrody@melandbudwick.com

Attorneys for Christina W. Lovato, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>DOUBLE JUMP, INC.,<br><br>     Debtor. | Lead Case No.: BK-19-50102-gs<br>(Chapter 7)<br>Substantively Consolidated with: |

| 19-50130-gs | DC Solar Solutions, Inc. |
|---|---|
| 19-50131-gs | DC Solar Distribution, Inc. |
| 19-50135-gs | DC Solar Freedom, Inc. |

| | |
|---|---|
| CHRISTINA W. LOVATO,<br><br>     Plaintiff,<br><br>v.<br><br>KING SOLARMAN, INC., CHIANG LIAN CUNG a/k/a MICHAEL CUNG, KING SOLARMAN (INDION) FUND I, LLC, AND KING SOLARMAN (INDION) FUND II, LLC,<br><br>     Defendants. | Adversary No.: 21-05028-gs<br><br>**TRUSTEE'S RESPONSE TO DEFENDANT'S MOTION FOR ORDER COMPELLING DISCOVERY AND ADDITIONAL RELIEF [ECF No. 133]**<br><br>**Hearing Date:  April 21, 2023**<br>**Hearing Time: 9:30am** |

1

Christina W. Lovato, as chapter 7 trustee ("***Trustee***") for the bankruptcy estates of DC Solar Solutions, Inc., DC Solar Distribution, Inc., DC Solar Freedom, Inc., and Double Jump, Inc. ("***DC Solar***" or the "***Debtors***"), files her response in opposition to Defendants' Motion for Order Compelling Discovery and Related Relief ("***Motion***") filed by defendants-King Solarman, Inc. and Michael Cung (together, the "***Defendant***") [ECF No. 133].

## INTRODUCTION

Respectfully, the Defendants' Motion should be denied. Because the Defendants have mis-framed the dispute, the Trustee begins with this introductory section.

<u>Background</u>            Jeff Carpoff perpetrated a Ponzi scheme through and upon DC Solar, an entity which had some legitimate business and operated from ~2010-2018. There was a law enforcement raid followed by a bankruptcy filing – and that was followed by the appointment of the Trustee aimed at preserving assets for the benefit of the estate.

<u>The Adversary</u>          The Trustee brought this straightforward adversary proceeding ("***Adversary***") asserting only a claim for "actual fraudulent transfer" (and <u>not</u> for "constructive fraudulent transfer"). The Trustee must prove only a single element: whether the Transfers were made with the actual intent to hinder, delay, or defraud creditors.

The Trustee has identified the Transfers she is seeking to avoid by (1) transferor; (2) transferee; (3) date; and (4) amount – there is no issue of fact on any of these items.[1]

The Trustee's primary mechanism to prove her single requisite element of "actual intent" is through the Ponzi Presumption (defined below). The Trustee – per this Court's direction – publicly filed and disclosed to the Defendants:

- Her motion for partial summary judgment [ECF No. 99] ("***MPSJ***"), seeking this Court's determination that Carpoff ran a Ponzi scheme through DC Solar.[2]

- Her statement of undisputed facts [ECF No. 100] in support of her MPSJ.

And

---

[1] ECF Nos. 82, ¶¶ 40 & 41 and 84, ¶¶ 40 & 41.
[2] The Trustee withdrew without prejudice her MPSJ, per this Court's direction. [ECF No. 118].

- Her expert's report, *i.e.,* the declaration of Melissa Davis, CPA, CRE, CIRA [ECF No. 101] ("***Davis Report***"), specifically identifying the documents she relied upon in her analyses and coming to her conclusion.

In other words, the Trustee has provided to the Defendants, in detail, the specific and limited set of documents and items to prove, in material part, her prima facie case.

The Defendants only defense, which is statutory and which the Defendants have the burden to prove, is the conjunctive items of (1) value; **and** (2) good faith.

<u>Document Production</u>        Early in this Bankruptcy Case, with the Defendants' involvement (including the resolution of their objections), the Trustee put great effort into a mechanism in which she would turn over the DC Solar books and records that were turned over to her. *See* Protocol Orders (defined below). Now, in this Adversary, the Trustee is complying with the Protocol Orders and F.R.C.P. 34(b)(2)(E)(i). The Trustee is making her document production as required by the Federal Rules and applicable law.

But the Defendants claimed this is insufficient. So even though the Trustee disagreed, after meet-and-confers, the Trustee went above-and-beyond what was required of her.

<u>First</u>, the Trustee produced the specific items considered by Ms. Davis in the Davis Report, notwithstanding that the Trustee had withdrawn her MPSJ and expert discovery has not yet commenced. Thus, the Trustee provided the Defendants with those specific documents in support of the Trustee's prima facie case and the Ponzi Presumption, as laid out in the Davis Report. The Trustee made this production on December 12, 2022.

<u>Second</u>, the Trustee offered to perform electronic searches of the documents maintained in the Trustee's own database through "*search terms*" to be provided by the Defendants. The Trustee offered to do so at her and her professionals' own time and expense. The Trustee made this offer to the Defendants, among other times, in writing on (1) November 22, 2022; (2) December 12, 2022; and (3) February 9, 2023.[3]

The Defendants have **refused** to engage in this process and **refused** to provide the Trustee with search terms. The Defendants refuse to take "yes" for an answer. The Trustee remains willing to engage in this process.

---

[3] *See* **Composite Exhibit 1**.

Conclusion                    For all the reasons explained in this Response, the Trustee has properly fulfilled her discovery obligations and the Defendants' Motion should be denied. In this straightforward Adversary, where (on the one hand) there are limited meaningful fact-issues as to the Trustee's utilization of the Ponzi Presumption to prove her prima facie case, and (on the other hand) the Defendants' having the burden to prove their statutory defense, the Trustee has properly complied with the Federal Rules, the Protocol Orders, and the mandatory principles of proportionality in discovery.

This is even more compelling given the Trustee's (1) production of the Davis Report materials; and (2) the Trustee's offers (and continued willingness) to perform reasonable key-word searches for the Defendants at her and her own professionals' time and expense. And the Trustee will take other reasonable steps to address the Defendants' claimed needs.

But the Defendants' Motion seeks relief way beyond that required of the Trustee by any applicable rule or law, and the Defendants' Motion should be denied, and all of their requested relief rejected.

## **BACKGROUND**

A. Background Facts[4]

1.      At all material times, Jeff Carpoff perpetrated a Ponzi scheme, which included the looting of DC Solar for his individual benefit.[5]

2.      The Defendants supplied solar panels to DC Solar.

3.      DC Solar transferred over $40 million to the Defendants in the 4 years prior to the Petition Date ("***Transfers***").

4.      Of that $40+ million, the Trustee alleges that the Defendants kicked back to Jeff Carpoff, directly or for his benefit, ~$20 million ("***Kickback Transfers***").

5.      The Trustee has identified the Kickback Transfers with specificity, including:

---

[4] *See* Defendant's Answer [ECF No. 82]; Defendant's responses to the Trustee's interrogatories (**Exhibit 2**).
[5] The substantively identical plea agreements ("***Plea Agreements***") of Jeff Carpoff, Alan Hansen, Ronald Roach and others are all public record and admissible evidence. *See e.g., In re Calvert*, 2015 WL 2345157, *1 (W.D. Wash. May 14, 2015) *citing In re Slatkin*, 525 F.3d 805, 812 (9th Cir. 2008). *See also* MPSJ and Davis Report.

- Payments of $560,000 to admitted Carpoff-coconspirator Alan Hansen.
- Payments of $80,000 to casinos for Carpoff's benefit.
- Payments of over $16 million to Carpoff's entity J&C Consulting Inc. ("**J&C**").

6.    The Trustee has not yet taken the Defendants' depositions, which is the subject of the Trustee's pending motion to compel [ECF No. 144].

B.    The Trustee's Complaint and the Protocol Orders

7.    On January 22, 2021, the Trustee filed her Complaint seeking to avoid and recover the Transfers on a single theory: actual fraudulent transfer.

8.    On July 22, 2021, the Trustee filed her Motion to Establish Protocol for Production of Documents [ECF No. 2796] ("**Protocol Motion**"). The purpose of the Protocol Motion was to establish a uniform protocol governing the Trustee's response to requests for production, the Trustee's production of documents, and the accompanying obligations to maintain documents produced by the Trustee in a secure fashion. *See id.*

9.    On November 22, 2021, the Court entered the first protocol order [ECF No. 2988] ("**First Protocol Order**"), which established a mechanism through which the Trustee may respond to requests for production.

10.   On January 20, 2022, the Court entered the second protocol order [ECF No. 3120] ("**Second Protocol Order**"), which ordered a party seeking the production of any third-party documents to seek those documents directly from their source before seeking those documents from the Trustee.

11.   On August 8, 2022, February 17, 2023, and March 10, 2023, the Defendants served the Trustee with requests for production of documents and interrogatories. In total, the Defendants have served the Trustee with 64 requests for production and 39 interrogatories.

12.   The Trustee has timely responded to each of the Defendants' discovery requests that have come due. The Trustee is in the process of complying with the Protocol Orders.

13. On May 13, 2022, the Trustee filed her MPSJ seeking a determination of the existence of a Ponzi scheme, as well as the Davis Report and Statement of Undisputed Facts. [ECF Nos. 99, 100, & 104].[6]

14. Ms. Davis is the Trustee's expert witness. In the Davis Report, Ms. Davis identified the documents she relied upon.

### C. The Disputes, and Efforts to Resolve the Document Dispute

15. Since the Trustee's production, the Trustee and the Defendants have met and conferred multiple times, in writing and by telephone, to consensually resolve their disputes.

16. First, the Trustee had provided the Defendants with the documents she received as Trustee in the manner she received them, as permitted by F.R.C.P. 34.

17. Second, the Trustee has provided the Defendants with a separate production, on December 12, 2022, with all documents relied on by Davis in the Davis Report. *See* Ex. 1.

18. Third, the Trustee proposed that the Defendant provide "*search terms*" to enable the Trustee to perform electronic searches of the documents. That way, and notwithstanding the Trustee's compliance with F.R.C.P. 34, the Trustee could alleviate any claimed burden on the Defendants and efficiently search for documents.

19. The Trustee made this offer in writing on at least November 22, 2022, December 12, 2022, and February 9, 2023. *See* Ex. 1. This is a well-established procedure in litigation with large amounts of documents.

20. The Defendants have refused the Trustee's offer.

### ARGUMENT

The general principles of discovery include as follows:

Relevancy alone is no longer sufficient – <u>discovery must also be proportional to the needs of the case</u>. To fall within the purview of appropriate discovery, the information sought must also be <u>proportional to the needs of the case, including</u> consideration of the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweigh its likely benefit. <u>Proportionality focuses on the marginal utility of the discovery being sought</u>. At

---

[6] As instructed by the Court, the Trustee has since withdrawn her MPSJ.

bottom, proportionality is a "common-sense concept" that should be applied to establish reasonable limits on discovery.

*Ashcraft v. Experian Info. Sols., Inc.*, 2018 WL 6171772, *1 (D. Nev. Nov. 26, 2018) (internal citations omitted, emphasis added).

The Trustee respectfully submits that the Defendant's Motion, especially given the principles of proportionality, should be denied.

**I.** **In Response to the Defendant's Requests for Production, The Trustee Has Complied with the Federal Rules and the Protocol Orders, And Has Even Gone Above-and-Beyond by Offering to Perform Searches Based on Search Terms.**

A. The Defendant's Request for Production

The Defendant's Requests for Production ("***RFP***") contains 58 requests for documents seeking all documents relating to everything having to do with DC Solar, the Defendants, DC Solar's financial status, the Transfers, and the Carpoff Ponzi Scheme. **In other words, the Defendant demanded all documents related to DC Solar.**

B. The Trustee May Produce Documents "As They are Kept In the Ordinary Course," Which Means, As They Were Turned Over to the Trustee

F.R.C.P. 34(b)(2)(E)(i) reads in part as follows:

Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

(i)     A party must produce documents as they are kept in the usual course of business **or** must organize and label them to correspond to the categories in the request; …

(emphasis added).

The clear terms of Rule 34 give the Trustee a choice: she may produce documents as kept "in the usual course of business" **or** "label[ed] ... to correspond to the categories in the request." *See e.g., Anderson Living Tr. v. WPX Energy Prod.,* 298 F.R.D. 514, 526 (D.N.M. 2014); *MGP Ingredients, Inc. v. Mars, Inc.,* 2007 WL 3010343, *4 (D. Kan. Oct. 15, 2007) ("Defendants had the right to choose the option of producing their documents and ESI as kept in the usual course of business.").

Thus, courts permit the Trustee – a bankruptcy trustee – to turn over the Debtors' books

and records in the manner those documents were provided to her, as that constitutes how the documents were "kept in the usual course of business." *See e.g., In re Dozier Fin., Inc.,* Case No. 18-1888 [ECF No. 41] (D.S.C. Apr. 23, 2019) ("[T]he Trustee may produce the material as it was provided and in the manner, it was kept in the ordinary course of business. Corporate Defendants' motion to compel the Trustee to remove certain documents from the mirrored hard drives [ECF No. 32] is denied. Should Defendants be unwilling to accept the materials, they do so at their own peril.") (**Exhibit 3**); *In re Adelphia Commc'ns Corp.,* 338 B.R. 546, 552 (Bankr. S.D.N.Y. 2005) ("There is on-point authority for permitting access to warehoused documents of a bankruptcy debtor as being stored in the 'usual conduct of business.'"); *Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp.,* 222 F.R.D. 594, 598 (E.D. Wis. 2004) (granting the opposing party access to the storage facility where the party's documents were placed by a bankruptcy trustee satisfied the party's obligations to produce its records as kept in the usual course of business, and ruling that "according to the plain language of Rule 34, a responding party has no duty to organize and label the documents if it has produced them as they are kept in the usual course of business."); *see also F.D.I.C. v. Boggus,* 2015 WL 11457700, *2 (N.D. Ga. May 13, 2015) ("The FDIC has agreed to produce discoverable material as it was kept in the usual course of business… A further responsiveness review, therefore, is not necessary….".).

> C.  The Trustee Has Complied with the Federal Rules.[7]

The Trustee has complied with her discovery obligations by producing the Debtors' books and records as they were turned over to her. The Federal Rules provide the Trustee with a choice, the Trustee made her choice, and the Trustee effectuated her choice. And contrary to the Defendant's assertions, the Trustee – in making her choice – is not required to conduct a responsiveness review.

This is 100% compliant with the scope of appropriate discovery, *i.e.,* proportionality. The Trustee is a bankruptcy trustee, seeking to fulfill her statutory charge by acting for the benefit of the estate and its creditors, in a large bankruptcy case spreading in many directions. *See*

---

[7] The Trustee has satisfied any burden to show that the documents were produced to her in this manner through the Protocol Orders and related filings.

*generally,* docket. The Trustee has brought a straightforward claim, on a single theory of avoidance and recovery (*i.e.,* actual fraudulent transfer) with limited items in dispute.

The Trustee complied with her duties and obligations under the Federal Rules.

### D. The Protocol Orders

Early-on, the Trustee understood: (1) the large number of documents turned over to her in the manner kept by the Debtor over an eight-year period (DC Solar operated from approximately 2010-2018); (2) that she would be bringing avoidance and other litigation against third-parties, who would be seeking document discovery; and (3) other parties, such as DC Solar investors, that would be seeking discovery from the Trustee for their own purposes.

Thus, in the open light of the Court, the Trustee sought a uniform protocol governing the Trustee's responses to document requests, the manner of the Trustee's production, and some of the requesting / receiving parties' obligations. In support of that motion practice, the Trustee explained the documents at issue, and the law supporting her requested relief. The Court granted the Trustee's motion (in part, and after informed discussion by a range of parties) and established a protocol through which the Trustee may respond to document requests through production of the Debtors' books and records. This is the First Protocol Order.

The Trustee also sought a uniform protocol governing production of documents she received from others. The Court's Second Protocol Order directs the Trustee to provide a requesting party with a schedule that identifies third parties from whom the Trustee has received documents, so that the requesting party can make a good-faith effort to obtain the documents directly from their source (and then directing steps after that is completed).

The Trustee has complied with the Protocol Orders by (1) producing the Debtors' books and records as they were kept in the usual course of business and (2) by identifying the third parties that may have documents responsive to each of the Defendant's requests.

### E. Second Protocol Order, Section 3(f)

The Defendant argues that the Trustee has failed to comply with Section 3(f) of the Second Protocol Order. This is inaccurate. As explained above, it is black-letter law that – compliant with the Federal Rules – the Trustee does not have to perform a responsiveness review

if she is producing documents pursuant to F.R.C.P. 34(b)(2)(E)(A)(i). The Defendants are demanding something they are not entitled to under the Rules and under the Protocol Orders.

But even moving to a wider lens, and emphasizing the discovery system's mandate that "proportionality is a 'common-sense concept' that should be applied to establish reasonable limits on discovery,"[8] the Trustee submits that:

- This is a straightforward dispute, with limited matters in dispute.

- The Defendant was "there," and the Trustee was not. The Trustee is an after-the-fact fiduciary while the Defendant transacted business for years with DC Solar, Jeff Carpoff, and J&C. The Defendant received the Transfers and made the Kickback Transfers.

- The Defendant has the transfer records, has admitted that the Transfers occurred, and that it was the transferee.[9]

- The Trustee has filed her MPSJ and related submissions, including the Davis Report, which presents the Ponzi scheme and the items Ms. Davis relied upon.

- The Trustee has produced all items considered by Ms. Davis in the Davis Report, in a separate production.

- The Plea Agreements – executed by 7 different individuals and the United States before the U.S. District Court for the E.D. California, and admissible evidence in this Adversary – explain the broad contours of the Ponzi scheme and Carpoff's wrongdoing.

The Defendant has all, or substantially all, of the information it claims it needs. The Trustee has largely identified the documents she intends to rely on for her prima facie case (even though she need not do so per the Rules and the Protocol Orders), and the remainder will be developed through the Defendant's assertion of its bases for its statutory defenses.

F. **The Trustee Has Offered the Defendant, Repeatedly and in Good Faith, To Perform Reasonable Electronic Searches Based on Defendant-Provided Key Word Search Terms, to Ease the Defendant's Claimed Burden.**

The Trustee has repeatedly offered – at her and her professionals' own time and expense – to perform reasonable electronic searches of the Debtors' books and records using search terms provided by the Defendants. *See* Ex. 1. This is not required by the Federal Rules nor the Protocol

---

[8] *Ashcraft*, 2018 WL 6171772, *1.
[9] *See e.g.,* Answer, ¶¶ 23, 25, 31, & 34; Responses to Interrogatories, Interrogatory No. 1.

Orders. Yet, the Trustee made this offer, in good faith, to ease the Defendant's claimed burden in this straightforward Adversary.

The Defendants simply refuse to engage in this common mechanism for document production in litigation with large amounts of documents. *See e.g., L–3 Commc'ns Corp. v. Sparton Corp.*, 313 F.R.D. 661, 666 (M.D. Fla. 2015) ("Basic keyword searching techniques have been widely accepted by both courts and parties as sufficient to define the scope of their obligation to perform a search for responsive documents...".) (cleaned up).

In *Outzen*,[10] a 2021 district court decision, the producing party (just like the Trustee here) produced documents pursuant to F.R.C.P. 34(b)(2)(E)(i) in the manner maintained, **without** performing a review for "responsiveness" to the specific requests. In addition, the parties worked cooperatively to agree to electronic search terms, and the producing party produced the results of those searches as well. The district court explained:

> In the halcyon days before e-discovery, when documents were kept in filing cabinets rather than on servers, a corporate party could satisfy its obligations under Federal Rule of Civil Procedure 34(b)(2)(E)(i) by giving the requesting party access to the files of the relevant employees or departments within the corporation. For example, the response could say "the responsive documents may be found by examining the files maintained by employees Smith and Jones and the files maintained by the Finance Department." The responding party would then either provide copies of or access to those files as they were kept in the ordinary course of business. It would be up to the requesting party to search through them and separate the relevant from the irrelevant. The rule implicitly recognizes that such a review would be equally burdensome on either party and allows the producing party to decide which is more palatable: permitting the requesting party to rummage through its files or incurring the expense of culling the responsive documents from those files and organizing them according to each request.

> Kapsch has done the equivalent of giving Plaintiffs access to its files, with the additional step of limiting its production to those documents that contain the search terms agreed upon by the parties. This process is almost certainly not perfect, in that there are likely some relevant documents that were not captured by the searches and clearly some irrelevant documents that were, but the alternative would be for Plaintiffs—not Kapsch—to cull through all of the numerous custodians' files in search of the relevant files, as they would have had to have done if the files had only been maintained on paper. **Thus, Kapsch's production**

---

[10] *Outzen v. Kapsch Trafficcom USA, Inc.*, 2021 WL 3673786, *6 (S.D. Ind. Aug. 19, 2021), objections overruled, 2022 WL 2703847 (S.D. Ind. July 11, 2022).

**of the non-privileged documents that resulted from using the agreed-upon search terms to search the relevant document custodians' files satisfied its obligations under Rule 34. No additional responsiveness or relevance review was required.**

In other words, while electronically searching pursuant to search terms may not be perfect, it is more than adequate here, where, **in addition**:

- The Trustee has complied with her obligations under Rule 34.

- The Trustee has complied with the Protocol Orders.

- The Transfer information, or at least much of it, is not in dispute. And further, the Defendants know what transfers they received and made.

- The Trustee is an after the fact fiduciary, who was not there at the time (like the Defendants were).

- The Trustee's claim is straightforward, with a single item at issue in her prima facie case (actual intent, the Ponzi Presumption) and it is the Defendants' statutory defenses of value and good faith that are the primary items at issue (for which the Defendants have the burden and have the evidence to make this showing).

- The Trustee has already produced and provided much of the information, including:
  o The MPSJ
  o The Davis Report, and the documents Ms. Davis considered;
  o The Statement of Undisputed Facts in support of the MPSJ.
  o The Plea Agreements.

The Defendant seeks to improperly burden the Trustee. The Trustee has offered more than is required, *e.g.,* the "search terms" mechanism, which courts across the country permit as a reasonable add-on. The Trustee's discovery responses are wholly compliant with the requisite proportional discovery mandated by the Federal Rules and the needs of this case.

## II.    The Trustee's R. 26 Disclosures Comply with the Federal Rules

The Trustee has complied with her R. 26 disclosure obligations and the Defendants' argument should be rejected. In *Arroyo Process Equip., Inc. v. SPX Corp*., 2013 WL 12157584, *1 (M.D. Fla. Jan. 16, 2013) (emphasis added), the district court rejected the exact argument the Defendant submits here, by ruling:

Rule 26(a)(1)(A)(ii) requires a party to provide to other parties "a copy—or a description by category and location—of all documents ... that the disclosing

12

party has in its possession, custody, or control and may use to support is claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). **The rule does not require a party to produce documents; instead, it gives the disclosing party the option of producing the documents or providing a description of the category and the location of the documents**. *Ferguson v. Destefano*, No. 10–80385–CIV, 2011 WL 146716, at *4 (S.D. Fla. Jan. 18, 2011). **Plaintiff chose the latter**. Its Fed. R. Civ. P. 26 disclosures are sufficient in this respect. What is more, Defendant has already requested the documents pursuant to Fed. R. Civ. P. 34, …

*See also Forbes v. 21st Century*, 258 F.R.D. 335, 337 (D. Ariz. 2009) ("Rule 26(a)(1)(A)(ii) does not require parties to produce documents; other parties are expected to obtain the documents under Rule 34 or through informal requests.") ((quotations omitted). The Trustee explained her categorization in her R. 26 disclosures and the Protocol Orders. Further, as in the *Arroyo*, the Defendants have already issued document requests so this issue is not meaningfully promoting a conclusion to the discovery process and getting this Adversary to the finish line.

The Defendants rely on *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc*., 2021 WL 4808597, *2 (N.D. Cal. Mar. 17, 2021), which **supports** the Trustee's position. There, the court held that "Rule 26(a) requires a modest level of specificity …". The Trustee has more than complied, including through the Protocol Orders and the court papers leading up to same, wherein the Trustee explained exactly what she has and from where she obtained the categories and locations of documents.

Not only that, but the Trustee has (prematurely) filed her MPSJ, the Davis Report, and other supporting declarations, explaining exactly how she intends to (in large part) prove the single element of her claim.

The Trustee has complied with her obligations. The Rules provide the Trustee with a choice, and she chose. And as the Motion and this Response makes clear, this item is covered by the Defendant's requests for production, and therefore is largely irrelevant to the substantive goal – getting the Defendants the documents, in line with the Trustee's discovery obligations, so this Adversary can proceed forward toward conclusion.

### III.    The Defendant's Request for A Fact-Discovery Extension

The Defendants request, Motion, pg. 19, a fact and expert discovery extension. Of course, the Trustee agrees (as she has in the past) to a reasonable fact and expert discovery extension and will separately work with the Defendants to accomplish same.

### IV.    The Defendant Does Not Request Further Relief

Although the Defendants state – seemingly in stressing her substantive points – that the Trustee's actions are "sanctionable," the Defendants do not actually request fees or another sanction. Because the Defendants have this burden and did not make the request, the Trustee does not respond (she cannot respond to an un-made request).

Yet, to the extent necessary, the Trustee incorporates her arguments above, submits that she has sought in good faith effort to comply with her discovery obligations, and has complied with her discovery obligations, in line with the Federal Rules, the Protocol Orders, and decisional law.

The Defendants certainly are not entitled to a sanction / fee under F.R.C.P. 37(d)(3), which requires a "complete failure" to comply. [11]

### CONCLUSION

Jeff Carpoff ran a Ponzi scheme through and upon DC Solar for eight years, while manufacturing thousands of mobile solar generators. Carpoff's fraud led to the pre-petition Raid, the FBI Declaration [ECF No. 106-1], and (so far) seven Plea Agreements.

The Trustee commenced this Adversary, one of many, and has sought in good faith to work to an orderly contested resolution of the ultimate dispute at every stage. The Trustee has complied with Rule 34 and her discovery obligations and has gone beyond that seeking to ease any discovery burden on the Defendants.

Yet, the Defendants have responded with substantial and unreasonable delay. The Motion was filed long after the Trustee's responses were served, and months after Defendants initiated

---

[11] *Era Helicopters, LLC v. Island Operating Co.,* 2009 WL 455336, *3 (S.D. Tex. Feb. 23, 2009) ("As for sanctions under Rule 37(d)(3) they are only available for a complete failure to file answers to interrogatories or requests for documents. Fed.R.Civ.P. 37(d)(1)(A)(iii). Although the Court finds Plaintiff's responses to discovery requests incomplete and evasive, this is insufficient to make attorney fees an applicable sanction under the Rules.").

meet and confer attempts – months that could have been used productively to craft and run search terms as offered by the Trustee, a common mechanism to address large volumes of discovery in litigation the Defendants have been unwilling to engage in. In the meantime, the Defendants have also refused to sit for deposition. The Defendants have demanded documents and information that (1) they already have; (2) they have better access to than the Trustee, who was not "there"; and (3) that the Trustee has provided or is otherwise in the public record. The Defendants have demanded that the Trustee comply with obligations beyond that under the Federal Rules and applicable law, and when the Trustee seeks to work with the Defendants, she is refused and met with delay. The Defendants have demanded documents and information way out of proportion to the needs of this case and that would overwhelmingly burden the Trustee and the estate with no meaningful benefit to the Defendants.

Respectfully, for all the reasons stated above, the Defendants' Motion should be denied.

DATED: April 7, 2023.

**HARTMAN & HARTMAN**

*/s/ Jeffrey L. Hartman*
Jeffrey L. Hartman, Esq.
*Attorney for Plaintiff Christina W. Lovato*

**MELAND BUDWICK, P.A.**

*/s/ Meaghan E. Murphy*
Michael S. Budwick, Esq.
Solomon B. Genet, Esq.
Meaghan E. Murphy, Esq.
Gil Ben-Ezra, Esq.
Alexander E. Brody, Esq.
*Attorneys for Plaintiff Christina W. Lovato*

## CERTIFICATE OF SERVICE

I certify that on April 7, 2023, I caused to be served the above-named document as indicated below:

✔ a. Via ECF to:

(The following is the list of parties who are currently on the list to receive email notice/service for this case.)

ALEXANDER E. BRODY    abrody@melandbudwick.com
ltannenbaum@melandbudwick.com ltannenbaum@ecf.courtdrive.com
mrbnefs@yahoo.com
MICHAEL S. BUDWICK    mbudwick@melandbudwick.com
ltannenbaum@melandbudwick.com ltannenbaum@ecf.courtdrive.com
CHRISTOPHER PATRICK BURKE    attycburke@charter.net
SOLOMON B. GENET    sgenet@melandbudwick.com
ltannenbaum@melandbudwick.com ltannenbaum@ecf.courtdrive.com
JEFFREY L HARTMAN    notices@bankruptcyreno.com
abg@bankruptcyreno.com
PAUL J. JOHNSON    pjohnson@diemerwei.com
ALEXANDER J. LEWICKI    alewicki@diemerwei.com
CHRISTINA W. LOVATO    trusteelovato@att.net NV26@ecfcbis.com
MEAGHAN E. MURPHY    mmurphy@melandbudwick.com

✔ b. Manual Notice List

KATHRYN S. DIEMER
55 S MARKET STREET, SUITE 1420
SAN JOSE, CA 95113

MICHAEL B. NISHIYAMA
39510 PASEO PADRE PARKWAY, SUITE 300
FREEMONT, CA 94538

I declare under penalty of perjury that the foregoing is true and correct.

DATED: April 7, 2023.

_/s/ Meaghan E. Murphy_____
Meaghan E. Murphy, Esq.

**From:**        Alex Brody
**Sent:**        Tuesday, November 22, 2022 10:18 AM
**To:**        Paul Johnson
**Cc:**        Meaghan Murphy; Kathryn Diemer
**Subject:**        RE: Christina W. Lovato v. King Solarman, Inc., et al., Adv. No. 21-05028-gs

**Follow Up Flag:**        Copied to Worldox (Email\4290\4290-74\02906177.MSG)

Hi, Paul-

I hope all is well.

The Federal Rules direct that discovery be conducted in a manner that secures "the just, speedy, and inexpensive determination of every action and proceeding." F.R.C.P. 1. Further, the 2015 amendments to F.R.C.P. 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the common-sense proposition of proportionality. Both the manner in which the Trustee has produced documents, and the manner in which the Court has directed that discovery take place, are consistent with these rules.

My firm has offered that you provide "search terms" so that the Trustee can perform reasonable searches of the Debtors' books and records, seeking documents responsive to your requests. This offer still stands. The Trustee awaits the receipt of search terms. Of course, the Trustee is happy to meet and confer regarding these items.

Thank you,
Alex


ALEXANDER E. BRODY



MELAND | BUDWICK

3200 Southeast Financial Center
200 South Biscayne Blvd.
Miami, Florida 33131

305-358-6363

abrody@melandbudwick.com
www.melandbudwick.com
Download  Vcard


**COMPOSITE EXHIBIT 1**

M
B

MELAND | BUDWICK

ATTORNEYS AT LAW

Meaghan E. Murphy
mmurphy@melandbudwick.com

December 12, 2022

**VIA ELECTRONIC MAIL**
Paul J. Johnson
Diemer & Wei, LLP
55 S. Market Street, Suite 1420
San Jose, CA 95113
Email: pjohnson@diemerwei.com

      RE:    ***Christina W. Lovato v. King Solarman, Inc., et al.*, Adv. No. 21-05028-gs**
            **Your Email dated November 29, 2022**

Dear Paul:

      I write in response to your email dated November 29, 2022. I emailed you on December 2, 2022 advising you that this letter was forthcoming.

      1.    The Federal Rules of Civil Procedure regarding Discovery

      The Federal Rules direct that discovery be conducted in a manner that secures "the just, speedy, and inexpensive determination of every action and proceeding." F.R.C.P. 1. Further, the 2015 amendments to F.R.C.P. 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the common-sense proposition of proportionality. Both the manner in which the Trustee produced documents last week, and the manner in which the Court has directed that discovery take place, are consistent with these Rules.

      2.    Document Production, Generally.

      Last week, the Trustee produced to King Solarman (c/o Katie and your office) the Debtors' books and records.

      As you know, the Trustee – an after-the-fact appointed fiduciary – sought and received court approval of this process. *See e.g.,* ECF Nos. 2988 & 3120. The Trustee made a significant effort in connection with this process due to her view, as allowable by law, that she produce the Debtors' books and records to you in the same manner in which she received them. *See* F.R.C.P. 34(b)(2)(E)(i); *In re Dozier Fin., Inc.,* C/A No.: 4:18-1888-MGL-SVH, 3 (D.S.C. Apr. 23, 2019) ("[T]he [t]rustee may produce the material as it was provided and in the manner, it was kept in the ordinary course of business"). By producing the Debtors' books and records in the manner in which she received them, the Trustee fulfilled her obligations under applicable law. Offering to perform searches based on search terms goes beyond those obligations.

MELAND | BUDWICK

Paul J. Johnson, Esq.
Diemer & Wei, LLP
December 12, 2022
Page 2

3.    <u>The Trustee's Willingness to Perform Searches Upon Receipt of "Search Terms"</u>

The Trustee has offered to perform reasonable searches if you provide her with search terms. Most of your requests for production are broad. *See* RFP #50. Running searches based on search terms you provide avoids needless disputes and ensures that the Trustee provides all documents that you specifically want.

Again, in an effort to conduct an efficient discovery process, the Trustee offers to perform reasonable searches once you provide her with search terms.

4.    <u>The Trustee is Not Being Evasive – To the Contrary, She is Being Wholly Open.</u>

The Trustee, as allowable under the Federal Rules, has sent you all of the Debtors' books and records and has identified third party production. The Trustee is not being evasive nor is she failing to comply with her discovery obligations. She is providing all possible documents you could possibly want and need for this litigation and has offered to perform searches to assist you.

5.    <u>Melissa Davis Documents</u>

Below is Sharefile link to all the documents listed on Exhibit A to the Declaration of Melissa Davis in Support of Trustee's Motion for Partial Summary Judgment [Adv. ECF No. 101].

https://melandbudwick.sharefile.com/d-s9aca7ec50cd343acafd6f7c939516b48.

Again, we are happy to meet and confer further on the items addressed in your November 29th email as well as the items addressed in this letter.

Sincerely,

*/s/ Meaghan E. Murphy*
Meaghan E. Murphy

cc:    Alexander E. Brody, Esq.

**M**
**B**

MELAND | BUDWICK

A T T O R N E Y S   A T   L A W

Alexander E. Brody
abrody@melandbudwick.com

February 9, 2023

**VIA ELECTRONIC MAIL**
Paul J. Johnson pjohnson@diemerwei.com
Diemer & Wei, LLP
55 S. Market Street, Suite 1420
San Jose, CA 95113

> RE:    ***Christina W. Lovato v. King Solarman, Inc., et al.***, **Adv. No. 21-05028-gs**
> **Your Letter Dated January 9, 2023**

Dear Paul:

I write in response to your letter dated January 9, 2023, which is attached as **Exhibit 1**.

1. The Trustee's Production of Documents

Again, as you know, the Trustee – an after-the-fact appointed fiduciary – sought and received court approval for the process in which she sent the Debtors' books and records to King Solarman (c/o Katie and your office). *See e.g.,* ECF Nos. 2988 & 3120. The Trustee made a significant effort in connection with this process due to her view, as allowable by law, that she produce the Debtors' books and records to you in the same manner in which she received them.

The Federal Rules and orders of the court set forth the parties' obligations for discovery. Fed. R. Civ. P. 34(b)(2)(E)(A) is very clear that the producing party has the right to produce documents as they are usually kept in the course of business instead of labeling its documents to corresponding requests for production:

> Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> (i)    A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii)   If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> (iii)  A party need not produce the same electronically stored information in more than one form.

MELAND | BUDWICK

Paul J. Johnson, Esq.
Diemer & Wei, LLP
February 9, 2023
Page 2

Subsection (E)(i) and relevant case law clearly give the producing party the right to choose whether to produce documents "in the usual course of business" or "label[ed] . . . to correspond to the categories in the request." *See also Anderson Living Tr. v. WPX Energy Prod., LLC*, 298 F.R.D. 514, 526 (D.N.M. 2014); *MGP Ingredients, Inc. v. Mars, Inc.*, 2007 WL 3010343, at *4 (D. Kan. Oct. 15, 2007) ("Defendants had the right to choose the option of producing their documents and ESI as kept in the usual course of business."); *SolarCity Corp. v. Doria*, 2018 WL 467898, at *6 (S.D. Cal. Jan. 18, 2018) (once documents are produced as usually kept in business, the requesting party "may search, filter, group, organize, and index the produced ESI 'in their own way, to their own satisfactory level of thoroughness, and at their own expense.'").

Accordingly, the Trustee has met her obligations under the Rules and this Court's order by producing the Debtors' books and records as kept in the usual course of business.

2. <u>Search Terms</u>

The Trustee is happy to meet and confer about appropriate search terms. Please provide us with your initial draft of the list of search terms so that we can adequately prepare for a teleconference to discuss how the search function works.

3. <u>Mediation</u>

Thank you for contacting Eric Nyberg to mediate this dispute. We are available on March 8. Please let me know if you need anything else from me on my end regarding scheduling.

I am happy to discuss anytime.

Sincerely,

*/s/ Alexander E. Brody*
Alexander E. Brody

cc:      Meaghan E. Murphy, Esq.

# DIEMER & WEI, LLP

55 S. MARKET STREET, SUITE 1420
SAN JOSE, CA 95113
TELEPHONE: 408.971.6270
FACSIMILE: 408.971.6271

KATHRYN S. DIEMER

_____

SUSAN B. LUCE

JULIA M. WEI

_____

HENRY CHUANG

PAUL J. JOHNSON

January 9, 2023

*BY E-MAIL*

Meaghan E. Murphy
Alex Brody
Melund Budwick
3200 Southeast Financial Center
Miami, Fl 33131
mmurphy@melundbudwick.com
abrody@melundbudwick.com

**RE:    Christina W. Lovato v. King Solarman, Inc. et al. Adv. 21-05028-gs**
**Trustee's Document Production and Responses to King Solarman Requests**
**for Production of Documents**

Dear Ms. Murphy and Mr. Brody,,

This email is in response to Ms. Murphy's letter dated December 12, 2022, and Mr. Brody's email dated December 2, 2022.  We appreciate your prompt responses.  We also received the external hard drive mailed to our office.

1.  <u>Current Status of Document Production</u>

We opened the external drive. It appears to contain slightly over 1 terabyte (i.e. 1,000,000 megabytes) of documents.  These documents do not appear to be organized in any way related to this litigation or the Defendant's discovery requests, and many appear entirely unrelated to the Defendant's requests. As am I sure you aware, merely receiving and keeping the debtor's records and keeping them in that format does not absolve the Trustee of her other discovery obligations. A leading treatise on Federal civil procedure before trial in the Ninth Circuit states:

> If the responding party produces a truckload of documents, saying "this is how they are kept," the requesting party many seek an order requiring the producing party to segregate the documents into categories. [FRCP 37(a)(3); see *SEC v. Collins & Aikman Corp.*, supra 256 FRD at 410 - **Rule 34 prohibits "simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought"** (internal quotes omitted)]

**EXHIBIT 1**

Hon. William W. Schwarzer et al., California Practice Guide: Federal Civil Procedure Before Trial ¶ 11:1944 (2022) (bold added for emphasis in this correspondence)

*SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403 (S.D.N.Y. 2009) is factually similar to the present case.  In that case, the Securities and Exchange Commission ("SEC") filed a large securities fraud case. One of the defendants served the SEC with requests for production of documents ("RPDs).  The defendant served 54 RPDs asking for 54 separate categories of documents.  The defendant filed a motion to compel arguing that the SEC "failed to identify documents responsive to requests for documents supporting particular factual allegations in the Complaint, preferring instead to 'dump' 1.7 million potentially responsive documents on" the defendant.  The SEC argued, as the Trustee does in the present case, that it was permitted to produce the 1.7 million documents as they were kept in the ordinary course of business.  The Court rejected the SEC's argument after a detailed analysis of Rule 34.  The Court noted that the SEC's "complete production is maintained as it was collected - - in large disorderly databases. The documents can only be provided in a useful manner if the agency organizes or labels them to correspond to each demand." *Id* at. 413.  The Court ruled that if the documents were not prepared as a part of "routine and repetitive activity," they must be organized and identified to correspond to the categories in the demand.  *Id* at 410.

Based on the foregoing, the Trustee's production is patently forbidden by Federal law.

2.  <u>Proposals for Further Productions by the Trustee</u>

We understand the Trustee is in possession of many documents and that you wish to impose "reasonable limits on discovery" through common sense solutions to discovery.  We have two suggestions to resolve this discovery dispute in a practical way.

First, as I noted in my e-mail to Alex on November 29, 2022, "it is entirely unbelievable that the Trustee does not already have many of the documents requested by King Solarman organized in a form that would have allowed the Trustee to prepare and file this lawsuit.  For example, at the most basic level, the Trustee and her counsel must have reviewed documents related to the alleged transfers from King Solarman to entities and persons allegedly for the benefit of Jeff Carpoff (RPD #18).  There is no reason for the Trustee not to have produced these documents."  Ms. Murphy's December 12, 2022 letter, does not refute this point in any way and does not address what documents related to this specific adversary and King Solarman's discovery requests the Trustee already has organized, separate and apart from the morass of data that you sent to our office via external hard drive.

For example, King Solarman requested all documents that support the Trustee's allegation that Michael Cung knew the alleged transfers were made for the benefit of Jeff Carpoff.  RPD 55. The Trustee responded to that request saying that documents would be produced, but did not identify any documents, and has now produced over one terabyte of unorganized documents. King Solarman has no way of knowing which, if any, are responsive. However, in Special Interrogatory No. 5, the Trustee identified facts that she contends support

the allegation that Michael Cung knew the transfers were made for the benefit of Jeff Carpoff and the Trustee produced, within that special interrogatory response, a sampling of documents that allegedly support the Trustee's allegation, including "select" communications between Cung and Carpoff, the January 2014 King Solarman/J & C Consulting Agreement, and a related e-mail.  This shows that the Trustee does, in fact, have the documents related to this case organized.  The insinuations in your letters that it is impossible for the Trustee to produce responsive documents without herculean efforts and "search terms" appears to be disingenuous.  Therefore, our first proposal is that the Trustee produce documents responsive to King Solarman's requests that the Trustee already has organized.  This is exactly what the Judge in *SEC v. Collins & Aikman Corp*., 256 F.R.D. 403 (S.D.N.Y. 2009) found when she ordered the SEC to produce the case file folders of documents that had been prepared by SEC attorneys in connection with litigation.  *Id*. at 414.

Please let us know if you will agree to produce documents as set forth above.

Second, regarding other documents that are potentially responsive to King Solarman's requests, but which have not already been organized by the Trustee, we are happy to meet and confer about appropriate search terms.  We will prepare an initial draft list of terms, but we believe that a teleconference would be efficient and productive so that we can discuss how your search function works and what kind of results it will pull.  Please let us know your availability for a telephonic conference.

We understand that mitigating costs on all sides is important.  We are following up with you separately regarding mediation and the scheduling of depositions.

Regards,

*/s/ Paul Johnson*

Paul J. Johnson

Page 3

DIEMER & WEI, LLP
Kathryn S. Diemer (*Admitted Pro Hac Vice*)
55 S Market Street Suite 1420
San Jose, CA 95113
Telephone: 408-971-6270
Facsimile: 408-971-6271
Email: kdiemer@diemerwei.com

CHRISTOPHER P. BURKE & ASSOCIATES
Christopher P. Burke (NV Bar No. 4093)
702 Plumas St.
Reno, NV 89509
Telephone: 775-333-9277
Facsimile: 702-385-7986
Email: attycburke@charter.net

*Counsel for King Solarman, Inc.*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re

DOUBLE JUMP, INC.

Debtor.

Affects:
☒ DC Solar Solutions, Inc.
☒ DC Solar Distribution, Inc.
☒ DC Solar Freedom, Inc.
☒ Double Jump, Inc.

Lead Case No.: BK-19-50102-gs
(Chapter 7)

Substantively consolidated with:

| 19-50130-gs | DC Solar Solutions, Inc. |
| 19-50131-gs | DC Solar Distribution, Inc. |
| 19-50135-gs | DC Solar Freedom, Inc. |

King Solarman, Inc.'s Amended Responses to Special Interrogatories, Set 1

CHRISTINA W. LOVATO,

     Plaintiff,

v.

KING SOLARMAN, INC., CHIANG LIAN CUNG a/k/a MICHAEL CUNG, KING SOLARMAN (INDION) FUND I, LLC, and KING SOLARMAN (INDION) FUND II, LLC,

     Defendants.

Adversary No.: 21-05028-gs

| **PROPOUNDING PARTY:** | **Plaintiff Christina W. Lovato, Trustee** |
| **RESPONDING PARTY:** | **Defendant King Solarman, Inc.** |
| **SET NUMBER:** | **ONE** |

# EXHIBIT 2

1    **PRELIMINARY STATEMENT**

2    Defendant King Solarman, Inc. (hereinafter "King Solarman") has not, at this time, fully completed

3    her discovery and investigation in this action. All information contained herein is based solely upon such

4    information and evidence as is presently available and known to King Solarman upon information and belief

5    at this time.

6    Further discovery, investigation, research and analysis may supply additional facts, and meaning to

7    currently known information. King Solarman reserves the right to amend any and all responses herein as

8    additional facts are ascertained, legal research is completed, and analysis is undertaken.

9    The responses herein are made in a good faith effort to supply as much information as is presently

10    known to King Solarman.

11    **GENERAL OBJECTIONS**

12    1. King Solarman objects to the requests that impose or seek to impose any requirement or discovery

13    obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable

14    Local Rules and Orders of the Court.

15    2. King Solarman objects to the requests to the extent they seek disclosure of information protected

16    under the attorney-client privilege, deliberative process privilege, attorney work product doctrine, or any

17    other applicable privilege or immunity. Should any such disclosure by King Solarman occur, it is inadvertent

18    and shall not constitute a waiver of any privilege or immunity.

19    Subject to and without waiving the foregoing objections, Plaintiff provides the following responses:

20

21    **RESPONSES TO INTERROGATORIES**
    Special Interrogatory No. 1

22

23    1.    Please describe with particularity King Solarman's full understanding of the

24    Transfers, Including:

25    a. The parties;

26    b. The relevant date(s);

27

28                                                                                      2

1    c. The payment(s);

2    d. The transactions related to the Transfers;

3    e. Consideration provided by DC Solar, the Carpoffs, King Solarman, and Michael

4    Cung, and any other persons or entities;

5    f. Consideration received by DC Solar, the Carpoffs, King Solarman, Michael Cung,

6    and any other persons or entities;

7    g. DC Solar's role;

8
9    h. King Solarman's role;

10   i. The Carpoffs' role; and

11   j. Michael Cung's role.

12   ### Amended Response to Special Interrogatory No. 1

13       Responding Party objects to this request on the grounds that it is irrelevant, overly broad, and

14   unduly burdensome. Responding Party objects to this request on that grounds that has subparts and

15   is actually multiple requests in violation of the federal rules and the requirements limiting the

16   number of special interrogatories. Responding Party further objects that subparts make this request

17   vague and ambiguous. Responding Party further objects that the Request is vague as to "full

18   understanding." Responding Party objects that this request infringes on Responding Party's privacy

19   
20   rights, especially its right to financial privacy.  Responding Party objects to the extent this request

21   seeks documents or information protected by attorney-client privilege and/or work product, or any

22   other applicable privilege or similar doctrine.  Responding Party objects that the information sought

23   in this request has already been provided. Responding Party objects that the request is vague as to

24   
25   "full understanding."  Responding Party further objects that there was no exhibit 1 attached directly

26   to the special interrogatories, but Responding Party's counsel later received a separate Exhibit 1. A

27

28                                                                                              3

true and correct copy of that Exhibit 1 that Responding Party's counsel received from Propounding Party's counsel is attached to these responses to minimize confusion. Subject to and without waiving the foregoing objections, Responding Party responds as follows:

DC Solar made the transfers to King Solarman on the dates identified in Exhibit 1 and in the amounts identified in Exhibit 1. King Solarman provided solar parts, equipment, and materials in consideration for the transfers. King Solarman was instructed by Jeff Carpoff to send portions of the funds identified in Exhibit 1 to various other entities (e.g. Efficient Energy, J&C Consulting, and Hansen Management). D.C. Solar's role was that it transmitted funds and received solar panel parts and materials. King Solarman's role was that it received funds and transmitted solar panel parts and materials. Jeff Carpoff's role was to direct the transfer of funds. Michael Cung had no personal role in the transaction.

### Special Interrogatory No. 2

**2.**     Please identify with particularity all transfers of money King Solarman made in the four years prior to the Petition Date to J&C Consulting, Inc. For each transfer, state the amount, date, transferor, purpose, and the consideration King Solarman (or any other person or entity) received in exchange

### Amended Response to Special Interrogatory No. 2

Responding Party objects to this request on the grounds that it is irrelevant, overly broad, and unduly burdensome. Responding Party objects that this request infringes on Responding Party's privacy rights, especially its right to financial privacy. Responding Party objects to the extent this request seeks documents or information protected by attorney-client privilege and/or work product, or any other applicable privilege or similar doctrine. Responding Party objects that this request is

4

vague and ambiguous as to "**purpose.**" Responding Party further objects that the phrase following

King Solarman "(or any other person or entity)" makes this request vague and overbroad.

Responding Party objects that the information sought in this request has already been provided.

Subject to and without waiving the foregoing Objections, Responding Party Responds as follows:

Responding Party identifies the chart below. King Solarman made these transfers (i.e. the

purpose of the transfer) was because DC Solar and Jeff Carpoff instructed King Solarman to make

these transfers.  See chart below:

| Date: | | Amount: | Classified as : |
|-------|--|---------|-----------------|
| 2/4/15 | $ | 100,000 | Cost of doing business, business expenses |
| 12/3/15 | $ | 2,010,000 | Cost of doing business, business expenses |
| 5/20/16 | $ | 200,000 | Cost of doing business, business expenses |
| 9/6/16 | $ | 2,800,000 | Cost of doing business, business expenses |
| 1/26/17 | $ | 1,809,000 | Cost of doing business, business expenses |
| 12/29/17 | $ | 1,400,000 | Cost of doing business, business expenses |
| 11/8/18 | $ | 4,000,000 | Cost of doing business, business expenses |

**Special Interrogatory No. 3**

**3.** Please identify with particularity all transfers of money King Solarman made in

the four years prior to the Petition Date to Ahern Rentals, Inc. and Xtreme Manufacturing, LLC.

For each transfer, state the amount, date, transferor, purpose, and the consideration King

Solarman (or any other person or entity) received in exchange.

**Amended Response to Special Interrogatory No. 3**

Responding Party objects to this request on the grounds that it is irrelevant, overly broad, and

unduly burdensome. Responding Party objects to this request on that grounds that it is compound

and is actually multiple requests in violation of the federal rules and the requirements limiting the

number of special interrogatories. Responding Party further objects that compound nature of this

request make this request vague and ambiguous. Responding Party further objects that the Request

is vague as to "purpose." Responding Party objects that this request infringes on Responding Party's

privacy rights, especially its right to financial privacy. Responding Party objects to the extent this

request seeks documents or information protected by attorney-client privilege and/or work product,

or any other applicable privilege or similar doctrine. Responding Party objects that this request does

not seek information related to this lawsuit. Responding Party objects that the information sought in

this request has already been provided. Subject to and without waiving the foregoing objections,

Responding Party responds as follows:

6

King Solarman Inc. leases 300 units of solar lighting tower and solar camera trailer leasing relationship to Ahern Rental. King Solarman Inc. does not have any business with Extreme Manufacturing LLC. Responding Party objects that the identification of each lease payment from Ahern Rental to King Solarman, Inc. is unduly burdensome and irrelevant to this lawsuit.

**Special Interrogatory No. 4.**

Please identify with particularity all transfers of money King Solarman made in the four years prior to the Petition Date to Hansen Management & Consulting, LLC, Alan Hansen, or any entities affiliated with Alan Hansen. For each transfer, state the amount, date, transferor, purpose, and the consideration King Solarman (or any other person or entity) received in exchange.

**Amended Response to Special Interrogatory No. 4**

Responding Party objects to this request on the grounds that it is irrelevant, overly broad, and unduly burdensome. Responding Party objects to this request on that grounds that it is compound and is actually multiple requests in violation of the federal rules and the requirements limiting the number of special interrogatories. Responding Party further objects that compound nature of this request make this request vague and ambiguous. Responding Party further objects that the Request is vague as to "purpose." Responding Party objects that this request infringes on Responding Party's privacy rights, especially its right to financial privacy. Responding Party objects to the extent this request seeks documents or information protected by attorney-client privilege and/or work product, or any other applicable privilege or similar doctrine. Responding Party objects that the information sought in this request has already been provided. Subject to and without waiving the foregoing objections, Responding Party responds as follows:

7

King Solarman made these transfers (i.e. the purpose of the transfer) was because DC Solar and Jeff Carpoff instructed King Solarman to make these transfers.

| Date | | Amount | Classification |
|------|---|--------|----------------|
| 6/13/16 | $ | 50,000 | Cost of doing business, business expenses |
| 4/30/17 | $ | 510,000 | Cost of doing business, business expenses |

### Special Interrogatory No. 5:

Please identify with particularity all transfers of money King Solarman made in the four years prior to the Petition Date to Efficient Energy Distribution, Inc. For each transfer, state the amount, date, transferor, purpose, and the consideration King Solarman (or any other person or entity) received in exchange.

### Amended Response to Special Interrogatory No. 5:

Responding Party objects to this request on the grounds that it is irrelevant, overly broad, and unduly burdensome. Responding Party objects that this request infringes on Responding Party's privacy rights, especially its right to financial privacy. Responding Party objects to the extent this request seeks documents or information protected by attorney-client privilege and/or work product, or any other applicable privilege or similar doctrine. Responding Party objects that this request is vague and ambiguous as to "purpose." Responding Party further objects that the phrase following King Solarman "(or any other person or entity)" makes this request vague and overbroad. Responding Party objects that the information sought in this request has already been provided. Subject to and without waiving the foregoing Objections, Responding Party Responds as follows:

King Solarman made these transfers (i.e. the purpose of the transfer) was because DC Solar and Jeff Carpoff instructed King Solarman to make these transfers. See chart below:

8

| Date | Amount | Classification of Transfer |
|------|--------|----------------------------|
| 10/13/15 | $  160,507 | Cost of doing business with DC Solar, as business expenses |

**Special Interrogatory No. 6.**

Please identify with particularity all transfers of money King Solarman made in the four years prior to the Petition Date to Jeff Carpoff or to anyone or any entity for the benefit of Jeff Carpoff. For each transfer, state the amount, date, transferor, purpose, and the consideration King Solarman (or any other person or entity) received in exchange.

**Amended Response to Special Interrogatory No. 6.**

Responding Party objects to this request on the grounds that it is irrelevant, overly broad, and unduly burdensome. Responding Party objects to this request on that grounds that it is compound and is actually multiple requests in violation of the federal rules and the requirements limiting the number of special interrogatories. Responding Party further objects that compound nature of this request make this request vague and ambiguous. Responding Party further objects that the Request is vague as to "purpose." Responding Party objects that the request is vague as to "anyone or any entity for the benefit of Jeff Carpoff." Responding Party objects that this request infringes on Responding Party's privacy rights, especially its right to financial privacy. Responding Party objects to the extent this request seeks documents or information protected by attorney-client privilege and/or work product, or any other applicable privilege or similar doctrine. Responding Party objects that the information sought in this request has already been provided.

9

1    Subject to and without waiving the foregoing objections, Responding Party responds as

2    follows: Responding Party made no transfers to Jeff Carpoff within 4 years of the petition date.

3    Responding Party made all the transfers that it made to Efficiency Energy, Hansen Management and

4    Consulting, and J&C Consulting at the instruction of Jeff Carpoff.

5

6

7    **Special Interrogatory No. 7.**

8

9    7. Please identify with particularity (Including their titles and roles) all natural

10    persons, other than counsel, involved in answering these interrogatories.

11    **Amended Response to Special Interrogatory No. 7.**

12    Responding Party objects that this requests seeks information protected by attorney client-

13    privilege and attorney work product. Responding Party objects that this request does not seek

14    relevant information related to admissible evidence, or reasonably calculated to lead to the discovery

15    of admissible evidence.    Subject to and without waiving the foregoing objections, Responding

16    Party responds as follows:

17

18    Michael Cung.

19    **Special Interrogatory No. 8.**

20    Please identify all facts that support King Solarman's contention that a Ponzi

21    scheme was not perpetrated through the Debtors. See Answer, ¶ 14.

22

23    **Amended Response to Special Interrogatory No. 8.**

24    Responding Party objects that this request is overly broad and unduly burdensome.

25    Responding Party objects that this request is not reasonably calculated to lead to the discovery of

26    admissible evidence. Responding Party objects that the information sought in this request has

27

28

already been provided. Responding Party further objects that this request is premature until the

Trustee has responded to discovery requests and until discovery has been conducted (e.g.

depositions) as to the third parties who allegedly orchestrated and ran the alleged Ponzi scheme.

Discovery is ongoing and Responding Party reserves the right to amend this response.

**Special Interrogatory No. 9**

9. Please describe with particularity the business of King Solarman.

**Amended Response to Special Interrogatory No. 9.**

Responding Party objects that this request is vague and ambiguous. Responding Party

objects that this request is unduly burdensome and overly broad.  Responding Party objects that the

information sought in this request has already been provided. Responding Party objects that this

request is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and

without waiving the foregoing objections, Responding Party responds as follows:

King Solarman is a provider of solar panels and solar products.

**Special Interrogatory No. 10**

10. Please provide all facts that support King Solarman's contention that King

Solarman was a good faith transferee without knowledge of the voidability of the Transfers

pursuant to 11 U.S.C. § 550(b)(1) and/or (b)(2). See Answer, eighth and ninth affirmative

defenses.

**Amended Response to Special Interrogatory No. 10.**

Responding Party objects that this request is compound because it asks about "good faith"

and also "without knowledge of the voidability of the transfers."  Responding Party objects that this

request is overly broad and unduly burdensome. Responding Party further objects that the request is

vague and ambiguous.  Responding Party objects to the extent this request seeks information

11

1    protected by attorney client-privilege and/or work production, and/or any other similar doctrine.

2    Responding Party further objects to the extent this request seeks information protective by privacy,

3    financial privacy, and any other similar kind of protection.  Responding Party objects that the

4    information sought in this request has already been provided. Responding Party further objects that

5    there was no exhibit 1 attached directly to the special interrogatories, but Responding Party's

6    counsel later received a separate Exhibit 1. A true and correct copy of that Exhibit 1 that Responding

7    Party's counsel received from Propounding Party's counsel is attached to these responses to

8    minimize confusion.Subject to and without waiving the foregoing objections, Responding Party

9    responds as follows, without admitting the voidability of any transfer:

10

11        Any transfers to King Solarman were made to King Solarman in exchange for solar panel

12    parts and materials that had a reasonably equivalent value to the amount transferred to King

13    Solarman.  Agents of King Solarman understood that DC Solar was a reputable business that the

14    most powerful, intelligent, and sophisticated persons and entities in the United States had invested

15    in, and tacitly endorsed.  Agents of King Solarman had understood that professionals associated

16    with DC Solar, including attorneys and accountants, such as "Forrest Milder, Esq., one of the

17    country's foremost legal experts in tax advantaged transactions and a Nixon Peabody senior partner"

18    gave credibility and legitimacy to DC Solar, particularly when Mr. Milder "vouched for

19    Solutions, Distribution, Carpoff, and the investment in the marketplace" which was visible to agents

20    of King Solarman.  Quotations from Adversary Complaint, Case 21-05072, Doc. No. 1.  Further

21    professionals, Foley & Lardner LLP, Novogradic, and others gave legitimacy to DC Solar and it's

22    business model.  Further, the size, number, and sophistication of investors in DC Solar, such as US

23    Bank, East West Bank, Goldman Sachs, Warren Buffet, Berkshire Hathaway, Progressive

24    Insurances, and others, indicated to Responding Party that it was a reputable business.

25

26

27

28                                                                                                    12

1   Discovery is ongoing and Responding Party reserves the right to amend this response.

2

3

4   Dated: November 11, 2022                  DIEMER & WEI, LLP

5                                             /s/ Paul Johnson

6                                             Paul Johnson *(Admitted Pro Hac Vice)*

7
                                              Counsel for King Solarman, Inc.
8

9

10

11

12                          **VERIFICATION**

13      I, Michael Cung, declare:

14      King Solarman, Inc. is a Defendant in the above-captioned matter – *Lovato, v. King*

15   *Solarman, Inc. et al.*, United States Bankruptcy Court, Adversary Case No. Adversary No.: 21-

16   05028-gs. I am the Chief Executive Officer of King Solarman, Inc. and I am authorized to sign this

17   verification on its behalf.  I have read the following documents and know the contents thereof:

18      **King Solarman, Inc.'s Amended Responses to Special Interrogatories, Set 1**

19      The matters therein are true based upon my own knowledge, except as to matters therein

20   stated on information or belief, and as to those matters that I believe to be true. I am personally

21   aware of the contents and affirm that they are accurate.

22      I declare under penalty of perjury under the laws of the United States of America hat the

23   foregoing is true and correct.

24   DATE: November 3, 2022

25                                             Michael Cung

26

27

28                                                                          13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| *In re:* | ) | C/A No.: 4:18-1888-MGL-SVH |
| | ) | |
| Dozier Financial, Inc., | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| Janet B. Haigler, Chapter 7 Trustee, | ) | |
| | ) | |
| Debtor, | ) | ORDER |
| v. | ) | |
| | ) | |
| Michael A. Dozier, Sequence Financial | ) | |
| Specialists LLC, WebsterRogers, LLP, | ) | |
| WebsterRogers Financial Advisors, | ) | |
| LLC, Shilson, Goldberg, Cheung & | ) | |
| Associates, and Willcox Buyck and | ) | |
| Williams, P.A., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter arises out of the July 29, 2014 involuntary petition for
relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.,* filed
against Dozier Financial, Inc. ("Debtor"), in the United States Bankruptcy
Court for the District of South Carolina ("the Bankruptcy Court") styled as *In
re: Dozier Financial, Inc., Bankruptcy Case No. 14-04262-hb* ("Bankruptcy
Case"). Michael A. Dozier ("Dozier") was the Chief Executive Officer of the
Debtor, a member of its board of directors, and owned a majority interest of
the Debtor's outstanding shares. [ECF No. 1-1 at 5]. Plaintiff Janet B.

**EXHIBIT 3**

Haigler is the Debtor's Chapter 7 Trustee ("Trustee").

On December 27, 2017, the Trustee filed Adversary Proceeding No. 17-80113-HB in the Bankruptcy Court against Dozier, as well as corporate defendants Sequence Financial Specialists LLC ("Sequence"); WebsterRogers, LLP; WebsterRogers Financial Advisors, LLC (collectively with WebsterRogers, LLP "WebsterRogers"); Shilson, Goldberg, Cheung & Associates ("SGC"); and Willcox, Buyck, & Williams, P.A. ("Willcox") ("Corporate Defendants").

The matter is before the court upon Corporate Defendants' motion to compel the Trustee to review and remove selected documents from the mirrored hard drives obtained from the Debtor. [ECF No. 32]. The Trustee opposes the motion. [ECF No. 35]. Dozier has not filed a response to the motion. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(e) (D.S.C.).

Corporate Defendants' motion indicates they object to the method and materials the Trustee intends to produce in response to initial disclosures and in response to any requests for production served on the Trustee. [ECF No. 32]. The Trustee plans to produce all the documents and information obtained from the Debtor in the same form provided by the FBI, specifically

2

mirror images of the Debtor's hard drives. *Id.* at 1–2. After disclosure that the documents, as business records of the Debtor used by certain employees for personal matters, contain certain material some may find objectionable or pornographic, Corporate Defendants objected to the proposed method of production and demanded that Trustee produce only those documents that the Trustee may use to support her claims or defenses.

Pursuant to Fed. R. Civ. P. 34, the Trustee is required only to "produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). "While the party producing 'cannot attempt to hide a needle in a haystack by mingling responsive documents with large numbers of nonresponsive documents,' the plain language of Rule 34 makes clear that 'a responding party has no duty to organize and label the documents if it has produced them as they are kept in the usual course of business.'" *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, No. 3:15-CV-03447-JMC, 2017 WL 5191841, at *2 (D.S.C. Nov. 9, 2017) (citing *Williams v. Taser Int'l, Inc.*, No. 1:06-CV-0051-RWS, 2006 WL 1835437, at *7 (N.D. Ga. June 30, 2006)). If a party elects to produce documents "as they are kept in the usual course of business," the producing party "bear[s] the burden of showing that the documents were in fact produced in that manner." *Id.*

The Trustee has submitted an affidavit of an independent IT consultant who attests that the data included on the hard drives are in the same format as ordinarily maintained in the usual course of business. [ECF No. 35-1]. Therefore, the Trustee may produce the material as it was provided and in the manner it was kept in the ordinary course of business. Corporate Defendants' motion to compel the Trustee to remove certain documents from the mirrored hard drives [ECF No. 32] is denied. Should Defendants be unwilling to accept the materials, they do so at their own peril.

IT IS SO ORDERED.

April 23, 2019                           Shiva V. Hodges
Columbia, South Carolina                 United States Magistrate Judge

4